[L. A. No. 13.    Department Two.—March 11, 1896.]

ANDREW J. O'CONNOR, RECEIVER, ETC., RESPONDENT, v. O. S. WITHERBY, APPELLANT.

INSOLVENT NATIONAL BANK—ASSESSMENT BY COMPTROLLER OF CURRENCY — LIABILITY OF STOCKHOLDERS — ACTION BY RECEIVER — PLEADING— AVERMENT OF NONPAYMENT.—In an action by a receiver of an insolvent national bank, appointed under the laws of Congress by the comptroller of the currency, against one of its stockholders, to enforce an assessment made by the comptroller, the complaint sufficiently alleges nonpayment of the assessment at the time of the commencement of the action, as against a general demurrer, by an averment that "the defendant, though demanded, has failed and refused to pay said assessment, or any part thereof."

ID. — AVERMENT OF NECESSITY OF ASSESSMENT — DIRECTION OF SUIT BY COMPTROLLER.—An averment that the comptroller made the assessment against the stockholders, and directed the action to be brought, is a sufficient averment, as against a general demurrer, that he had determined the necessity of such action, and that he had decided when he made the assessment that it was necessary to enforce the personal liability of stockholders to pay the debts of the bank.

ID.—CONCLUSIVENESS OF COMPTROLLER'S ACTION—STRIKING OUT IMPROPER DEFENSE. —The action of the comptroller in making an assessment upon the stockholders of an insolvent national bank is conclusive upon the stockholders, and cannot be controverted in a suit against a stockholder to enforce the assessment; and an averment in an answer in such suit that the comptroller in making the assessment acted without due information of the assets and liabilities of the bank, and that an assessment one-half as great would have been sufficient, sets forth no defense, and is properly stricken out.

ID.—STOCK HELD SUBJECT TO LAW.—The owner of stock in a national bank holds it in view of and subject to the provisions of the law under which the bank is organized.

ID.—INSTRUCTIONS—DIRECTION TO FIND FOR PLAINTIFF.—Where there is no substantially conflicting evidence as to facts determinative of the case, or such facts are admitted, the judgment will not be reversed on account of an instruction to the jury to find for the plaintiff; though such practice is hazardous, and can be sanctioned only in the clearest cases.

ID.—TRANSFER OF STOCK—KNOWLEDGE OF TRANSFEREE—INDORSEMENT OF
CERTIFICATES.—Although a man cannot be made liable to the creditors
of a bank, where stock is transferred to his name on the books without
his authority or knowledge, yet where stock is transferred from the
name of the wife of the president of a bank to the name of its vice-
president, who ought to know of his relations to the bank, and who up-
held its credit, and indorsed the certificates thus transferred to him by
signature of his name in his own handwriting, he is conclusively charge-
able with knowledge that the certificates were issued to him.

ID.—OWNERSHIP OF STOCK—FRAUDULENT TRANSFER—LIABILITY TO CRED-
ITORS.—One in whose name stock stands upon the books of the bank
with his knowledge or consent is, as to the creditors of the bank, the
owner of the stock; and it is immaterial that the transfer to him, and
his indorsement of the certificates, was procured by the president of the
bank for a fraudulent purpose.

APPEAL from a judgment of the Superior Court of
San Diego County and from an order denying a new
trial. S. A. TORRANCE, Judge.

The facts are stated in the opinion of the court.

*E. Parker, W. T. McNeally,* and *Trippet, Boone &
Neale,* for Appellant.

The words " levy an assessment " is not equivalent to
alleging that the comptroller determined it to be neces-
sary to collect the liability. (*Kennedy* v. *Gibson,* 8 Wall.
503.) The court erred in striking out part of defend-
ant's answer. (*United States* v. *Knox,* 102 U. S. 422;
*Richmond* v. *Irons,* 121 U. S. 27; *Merriman* v. *Walton,*
105 Cal. 403; 45 Am. St. Rep. 50.) As the stock was
not indorsed to deceive anyone, and no one was de-
ceived thereby, defendant is not estopped from show-
ing the true nature of the transaction. (Code Civ.
Proc., sec. 1962, subd. 3; *Martin* v. *Zellerbach,* 38 Cal.
300; 99 Am. Dec. 365; *Griffeth* v. *Brown,* 76 Cal. 260;
*McCormick* v. *Orient Ins. Co.,* 86 Cal. 260.) The deed
of all personal property of defendant and the indorse-
ment of the stock shows that the stock was placed
with the president for the purpose of transfer, and re-
lieves defendant of liability. (*Hayes* v. *Shoemaker,* 39
Fed. Rep. 319; *Young* v. *McKay,* 50 Fed. Rep. 397;
*Whitney* v. *Butler,* 118 U. S. 655; *Stephens* v. *Follett,* 43

Fed. Rep. 842, 845; *Keyser* v. *Hitz*, 133 U. S. 139; *Johnston* v. *Laflin*, 103 U. S. 800; 2 Thompson on Corporations, sec. 1924.)

*V. E. Shaw*, for Respondent.

The allegation of nonpayment is sufficient. (*O'Hanlan* v. *Denvir*, 81 Cal. 60; 15 Am. St. Rep. 19; *Grant* v. *Sheerin*, 84 Cal. 197; *Gardner* v. *Donnelly*, 86 Cal. 367; *Rankin* v. *Sisters, etc.*, 82 Cal. 88; *Bliss* v. *Sneath*, 103 Cal. 43.) It is only necessary to aver that the comptroller did make the assessment prior to the suit and ordered the receiver to enforce it. A defect in the averment could be reached by special demurrer only. (*Welles* v. *Stout*, 38 Fed. Rep. 67; *Kennedy* v. *Gibson*, 8 Wall. 503; *Casey* v. *Galli*, 94 U. S. 673; *National Bank* v. *Case*, 99 U. S. 628; *United States* v. *Knox*, 102 U. S. 422.) In the absence of conflicting testimony, the court may direct a verdict for the plaintiff. (Hayne on New Trial and Appeal sec. 121b.) If an individual appears on the stockbook of a corporation as a stockholder, the *prima facie* presumption is that he is the owner in the absence of evidence to the contrary. (*Turnball* v. *Payson*, 95 U. S. 418; *Glenn* v. *Orr*, 96 N. C. 413; *Finn* v. *Brown*, 142 U. S. 56; *Hoagland* v. *Bell*, 36 Barb. 57; *Rockville etc. Turnpike Road* v. *Van Ness*, 2 Cranch C. C. 449; *Coffin* v. *Collins*, 17 Me. 440; *Mudgetts* v. *Horrell*, 33 Cal. 25; *Brown* v. *Finn*, 34 Fed. Rep. 124; *Webster* v. *Upton*, 91 U. S. 65; *Keyser* v. *Hitz*, 133 U. S. 138; *Irons* v. *Manufacturers' Bank*, 27 Fed. Rep. 591; *Richmond* v. *Irons*, 121 U. S. 27; *Sanger* v. *Upton*, 91 U. S. 56; *Baine* v. *Babcock*, 95 Cal. 593; *Upton* v. *Tribilcock*, 91 U. S. 45; *Butler* v. *Aspinwall*, 33 Fed. Rep. 217; U. S. Rev. Stat., secs. 5151, 5210; *Waite* v. *Dowley*, 94 U. S. 527.) An *ex parte* transfer in writing between seller and buyer is not sufficient to constitute a transfer. (*Bell's Appeal*, 115 Pa. St. 88, 99; 2 Am. St. Rep. 532.)

McFARLAND, J.—The "Consolidated National Bank," organized under the laws of Congress, failed on June 21,

1893, and on June 23, 1893, the United States comptroller of the currency appointed the plaintiff herein, O'Connor, receiver of said bank. On October 25, 1893, the said comptroller made an assessment for two hundred and fifty thousand dollars equally and ratably upon the shareholders, to the amount of one hundred per cent of the par value of the shares of the capital stock of said bank; and on November 25, 1893, he made an order directing the plaintiff, as such receiver, to institute suit to enforce against each shareholder his personal liability under such assessment, and under that order this action was brought. It is averred in the complaint that at the time of the failure of said bank defendant, Witherby, was a shareholder to the amount of one hundred shares, represented by certificate No. 211 for twenty-five shares, and by certificate No. 212 for seventy-five shares. Defendant denied the ownership of said shares. There was a jury empaneled in the case; but at the close of the evidence the court instructed the jury to find a verdict for plaintiff, which was done, and judgment was accordingly rendered for plaintiff. Defendant appeals from the judgment and from an order denying a new trial. We have given due consideration to the able and elaborate briefs of respective counsel; but in stating our conclusions we do not deem it necessary to discuss the points made at any great length.

The main contentions of appellant are that the complaint is insufficient, and that the court erred in instructing the jury to find for plaintiff.

1. The contention that the complaint does not contain a sufficient averment of nonpayment cannot be maintained. It is averred that "the defendant, though demanded, has failed and refused to pay said assessment or any part thereof"; and this is a sufficient averment of nonpayment at the time of the commencement of the action. There was only a general demurrer.

The law provides that the comptroller may enforce the individual liability of the stockholders if necessary to pay the debts of the bank; and the main contention

of appellant, as to the insufficiency of the complaint, is that it does not aver such necessity, nor that the comptroller determined that there was such necessity.   Appellant relies mainly on *Kennedy* v. *Gibson*, 8 Wall. 498, to support this contention.   But in that case the complaint showed that the receiver had brought the action of his own motion, without any order of the comptroller to do so, and without any action of the comptroller toward enforcing the individual liability of stockholders; while the court held that the receiver was the mere instrument and creature of the comptroller, and that the latter must decide when it is necessary to institute proceedings against the stockholders, and for what amount.   And it is as to this general action of the comptroller that the court say, " The fact must be distinctly averred in all such cases."   But an averment that the comptroller made the assessment and directed the action to be brought is a sufficient averment—as against a general demurrer at least—that he had determined the necessity of such action.   This was expressly decided by Justice Shiras in *Welles* v. *Stout*, 38 Fed. Rep. 67, where the complaint was like the one in the case at bar.   He refers to *Kennedy* v. *Gibson, supra,* and says: " Certainly the comptroller would not have made this assessment unless he had decided that it was necessary to enforce the personal liability of the stockholders.   The evidence that he had reached the conclusion that it was necessary to resort to the liability of the stockholders is found in the fact averred—that he made this assessment and ordered it paid."   The contention of the appellant that the complaint is insufficient in this respect cannot, therefore, be maintained.

The point made by appellant, that the court erred in striking out part of his answer, is not tenable.   The part stricken out was an averment that the comptroller in making the assessment acted without due information of the assets and liabilities of the bank; that such assets, independent of the liability of the stockholders, were sufficient to pay all the liabilities except one hundred

and twenty-five thousand dollars, and that a levy of fifty per cent upon the capital stock would have been suffi-cient. This averment constituted no defense. The action of the comptroller "cannot be controverted in a suit against a stockholder. It is conclusive upon him, and makes it his duty to pay." (*Casey* v. *Galli*, 94 U. S. 681. See, also, *Kennedy* v. *Gibson, supra; National Bank* v. *Case*, 99 U. S. 628.) In *Kennedy* v. *Gibson, supra*, the court say: "It would be attended with injurious conse-quences to forbid action against stockholders until the precise amount necessary to be collected shall be form-ally ascertained. . . . . If too much be collected, it is provided by the statute that any surplus which may re-main after satisfying all demands against the association shall be paid to the stockholders." The owner of stock in a national bank holds it in view of, and subject to, the provision of the law under which the bank is organ-ized.

2. We do not think that the judgment should be re-versed because the court instructed the jury to find for the plaintiff. Of course, such an instruction could not be upheld where there was conflicting evidence as to material facts which the jury had the right to pass on; but where there is no substantial conflict of evidence as to the facts determinative of the case, or such facts are admitted, there the judgment, will not be reversed for such an instruction—although the practice is hazardous, and can be sanctioned only in the clearest cases.

In the çase at bar the one hundred shares in question were originally represented by certificate No. 94, held by Mrs. Howard, wife of Bryant Howard, president of said bank. The evidence shows that this stock was transferred to the appellant on June 30, 1891. Appel-lant contends that there was a conflict of evidence on this point. We do not see anything in the record as to this matter which could properly be called a conflict; but if there was, it was immaterial. As between the bank, or its creditors, and the appellant, there was no actual legal transfer of the stock until July 2, 1892; and

whatever occurred, or did not occur, before that time between appellant and Mrs. Howard, is of no importance in this case.   The certificates remained in the name of Mrs. Howard, and appellant had no right to represent them.   But on July 2, 1892, the actual transfer was made on the books of the bank, when certificate No. 94 was surrendered and the two new certificates, Nos. 211 and 212, in lieu thereof, were issued to the appellant, regularly signed by the president and cashier, and corresponding entries made on the books of the bank. This was nearly a year before the suspension of the bank—down to which time the certificates remained in appellant's name, and no other transfer of them was made.   There was no conflict of evidence as to these facts.   Appellant contends—and testified—that he did not know that these certificates had been issued to him, and had not authorized them to be issued.   Of course, a man cannot be made liable to the creditors of a bank merely because, without his knowledge and under circumstances which did not put him on inquiry, someone had, without authority, caused some stock to be issued in his name.   But in the case at bar, in the first place, appellant, during all of the time of these transactions, was a stockholder, a director, and vice-president of the bank, attended directors' meetings, and gave advice as to the bank's business, and certainly ought to have known his relations to it.   He held himself out as sustaining the bank and indorsing its solvency.   And, in the second place, he indorsed these very two certificates with his name in his own handwriting; and this is conclusive proof by his own admission that he knew, or ought to have known, that they had been issued to him. He was one of the persons to whom the creditors of the bank had the right to look for the purpose of giving it credit; and he has shown nothing which enables him to escape from that position.   (See *Irons* v. *Manufacturers' Bank*, 27 Fed. Rep. 591; *Keyser* v. *Hitz*, 133 U. S. 147–49; *Finn* v. *Brown*, 142 U. S. 56.)

The real alleged grievance of appellant is that he was

CXI. CAL.—34

deceived and defrauded by Bryant Howard. Howard was his trustee of a large amount of property, his attorney in fact, and his confidential agent to manage his business. While appellant does not deny that the indorsements on the certificates are in his own handwriting, he says that he trusted Howard implicitly and signed all the papers which the latter presented to him, that he did not know what the certificates were when he indorsed them, and that Howard procured him to indorse them for a fraudulent purpose. Whether this be the true state of facts, or whether appellant takes this position for the purpose of repudiating the ownership of property which in 1892 was supposed to be valuable, but which a year afterward was a good deal worse than worthless, is a question between plaintiff and Howard. As to the creditors of the bank appellant was the owner of the stock; with secret transactions between him and Howard they are not concerned. In *Keyser* v. *Hitz*, *supra*, the court said: "There was no connection between her liability to be assessed and the alleged fraudulent intent with which her husband caused the transfers of stock to be made." In the case at bar it is unimportant how much of the time the certificates were in the possession of Howard; for he was appellant's private agent and trustee, with power to deal for appellant in the purchase and sale of stocks.

Under the foregoing views, we see no disputed material facts for the jury to pass on; and, therefore, we see no warrant for reversing the judgment on account of the said instruction complained of. And under these views the numerous exceptions taken by appellant to rulings of the court on the admissibility of evidence, refusals to give certain instructions asked, etc., are immaterial, and need not be specially noticed.

The judgment and order denying a new trial are affirmed.

TEMPLE, J., and HENSHAW, J., concurred.

Hearing in Bank denied.