MAY v. GENESEE COUNTY SAVINGS BANK.

1. BANKS AND BANKING—ASSIGNMENT OF STOCK—EVIDENCE.
   An assignment of a certificate of bank stock, absolute in form, may be shown to be for security merely.

2. SAME — LIABILITY OF STOCKHOLDERS — ERRONEOUS RECORD — PLEDGEES.
   One with whom bank stock had been deposited as collateral notified the cashier of the bank to transfer the stock to him as pledgee.  Instead of complying, the cashier issued a new certificate, absolute in form, and entered the transaction as an absolute transfer of the stock.  *Held*, that, since it is the bank's record of its stockholders, and not the form of its certificates, that constitutes notice to creditors, and the pledgee was in no way responsible for the erroneous entry, he could not be held liable to depositors upon an assessment as stockholder, under 3 How. Stat. § 3208e5, exempting from such liability those holding stock as collateral.

3. AGENCY—COLLECTION OF DEBTS—AUTHORITY.
   Persons dealing with an agent for collection are chargeable
   with knowledge that, in the absence of special authority, he ·
   can accept nothing but money in payment of debts.

Appeal from Ingham; Person, J.    Submitted April 18,
1899.    Decided June 5, 1899.

Bill by John A. May, receiver of the Ingham County
Savings Bank, against the Genesee County Savings Bank,
to enforce defendant's statutory liability as a stockholder
in complainant bank.    From a decree for complainant,
defendant appeals.    Reversed.

On July 20, 1895, Mr. Arthur O. Bement borrowed
$4,000 of the defendant bank, giving his promissory note,
payable on demand.    The note recited that certificate No.
188, for 50 shares of the capital stock of the Ingham
County Savings Bank, was deposited with the defendant
as collateral security for said loan.    Bement's certificate
of stock was dated October 23, 1893.    Upon the back of
the certificate was an assignment by Bement to the
defendant bank as pledgee of said 50 shares.    Bement did
not pay the note.    On January 16, 1896, the bank sent
its attorney and its vice-president, Mr. Atwood, to Lan
sing, with instructions to collect other claims against E.
Bement & Sons and another person.    Mr. Atwood took
with him the note of A. O. Bement, and while in Lansing
learned that Bement & Sons were at that time indebted
to the Ingham County Savings Bank in the sum of $26,-
000, the most of which had been in existence for three
years.    Mr. Atwood, considering that it would be safer
for his bank to have this 50 shares of stock transferred to
it as pledgee, so informed May, the cashier of the Ingham
County Savings Bank.    This was agreed to.    The old
certificate, No. 188, was surrendered, and a new certificate,
No. 258, for 50 shares, issued to the defendant bank.
This certificate was absolute in form, and contained no
statement that it was issued to the defendant bank as

pledgee.  The transfer was entered upon the books of the Ingham County Bank, and stood there in the name of the defendant bank until the Ingham County Savings Bank closed its doors, and failed; but of this entry the defendant had no notice or knowledge.  The bank was at that time a bankrupt concern, and probably always had been, as it had been reorganized out of the remains of another insolvent bank, from which it received and carried as assets a large amount of worthless credits.  When Mr. May handed the new certificate to Mr. Atwood, Mr. Atwood asked to have it issued to the bank as pledgee, to which May replied that it was just as well to let it stand as it was, and this was done.  The certificate and the note, which Mr. Atwood had with him, were then pinned together, and returned to the defendant bank, and have since been in its possession.  Mr. Bement had paid nothing upon the note.  Without detailing the testimony, we find as a fact that this certificate of stock was issued to the defendant with the distinct understanding on the part of the defendant bank and the Ingham County Bank that it was to be held as collateral security to Bement's note, and that no arrangement was made with Bement for the sale of the stock.  The defendant never authorized Mr. Atwood to purchase this stock in discharge of Bement's indebtedness, or for any other consideration, but always treated the transaction as designed for security only, and held the certificate for that purpose.  The court made an order authorizing the receiver to assess the stockholders in order to pay the depositors.  Under this order the assessment of the defendant is $3,250.  The court below held that the defendant was liable as a stockholder.

*S. L. Kilbourne*, for complainant.

*George R. Gold* (*George H. Durand*, of counsel), for defendant.

GRANT, C. J. (*after stating the facts*).  The statute under which this liability is sought to be enforced against defendant reads as follows:

"The stockholders of every bank shall be individually liable, equally and ratably, and not one for another, for the benefit of the depositors in said bank, to the amount of their stock at the par value thereof, in addition to the said stock; but persons holding stock as executors, administrators, guardians, or trustees, and persons holding stock as collateral security, shall not be personally liable as stockholders, but the assets and funds in their hands constituting the trust shall be liable to the same extent as the testator, intestate, ward, or person interested in such trust funds would be, if living or competent to act, and the person pledging such stock shall be deemed the stockholder and liable under this section. Such liability may be enforced in a suit at law or in equity by any such bank in process of liquidation, or by any receiver or other officer succeeding to the legal rights of said bank." Act No. 205, Pub. Acts 1887, § 46; 3 How. Stat. § 3208e5.

Decisions under the national banking act do not control the question under our statute, for the former exempts from personal liability only persons holding stock as executors, administrators, or trustees, and does not in terms exempt holders for security. Counsel cites 1 Cook, Stock, Stockh. & Corp. Law, § 247; *Aultman's Appeal,* 98 Pa. St. 505; *Crease* v. *Babcock,* 10 Metc. (Mass.) 525; *Holyoke Bank* v. *Burnham,* 11 Cush. 183; *Grew* v. *Breed,* 10 Metc. (Mass.) 569; *Price & Brown's Case,* 3 De Gex & S. 146; *Richardson* v. *Abendroth,* 43 Barb. 162. Some of the above cases involve statutes whose language is entirely different from our own. See *Crease* v. *Babcock.* Others hold that one who holds stock as collateral security is still liable where he has had the stock transferred in his own name, as absolute owner, on the books of the corporation; while, under the text of Mr. Cook, the liability is imposed upon a pledgee "who has had the stock *transferred into his own name on the corporate books.*" These authorities do not apply to this case. Even under the national banking act a creditor receiving a transfer of shares in a national bank as security for his debt is not subject to the personal liability imposed by the statute, where the certificate is surrendered, and a

new one issued in the name of the creditor as pledgee, and afterwards held in good faith as such pledgee, and as collateral security. *Pauly* v. *Trust Co.*, 165 U. S. 606. The court in that case cite *Anderson* v. *Warehouse Co.*, 111 U. S. 479, and say:

"This court in that case recognized it to be well settled that one who *allows* himself to appear on the books of a national bank as an 'owner' of its stock is liable to creditors as a shareholder, whether he be in fact the absolute owner or only a pledgee."

If the defendant had authorized the absolute transfer, or knew that it had been made upon the books of the bank to it as absolute owner, and had thus held itself out to the public as such, a question would be presented which we need not discuss. The defendant did not know it, and did not hold itself out as owner. If, therefore, it can be held liable under our statute, it must be because it received a certificate absolute in form. The certificate is no notice to creditors of the bank. It is the record of stockholders kept in the bank, upon which depositors and other creditors rely. A transfer absolute upon its face may always be shown to be an assignment as collateral security. Thus a deed may be shown to be in fact a mortgage. Upon the same principle, an assignment of a certificate of bank stock, absolute in form, may be shown to be for security merely. It would be a harsh rule that an officer of a bank may, by making a false entry, or by failing to make the correct one, impose the statutory liability, when it is known to him that the stock is held as security merely, or in some other fiduciary capacity. We do not think our statute can be thus construed. Mr. May, the cashier, knew that this stock was held in pledge to secure a loan to Mr. Bement. It was his duty, for the protection of his own bank, if for no one else, to so enter the transfer upon its books. His failure to do so cannot affect the rights of the defendant. Mr. Atwood had no authority from the defendant bank to purchase this stock and discharge the debt. An agent to collect debts, in the absence of special

authority, is authorized to receive money alone.   It appears conceded that one bank cannot purchase the stock of another except as it may do so to protect its own loans. The officers of the Ingham County Bank were chargeable with knowledge that Mr. Atwood, as defendant's agent, had no such authority, and they dealt with him at their peril.   If Mr. Atwood had reported to May that he had such authority, his statement would not be received as evidence of it.   Mr. Atwood reported to his principal that he had received this stock as security.   The defendant bank ratified no other arrangement; it knew of no other. The mere fact that the certificate was absolute in form was not notice that Mr. Atwood had purchased it for the bank, and had discharged the debt.   The entire transaction was the ordinary one of securing a loan from a failing debtor, and was so understood by all the parties to it.

Decree reversed, and decree entered for the defendant, with the costs of both courts.

The other Justices concurred.