## FOOTE v. ANDERSON.

(Circuit Court of Appeals, Third Circuit. June 16, 1903.)

### No. 26.

1. CORPORATIONS—ACTION TO CHARGE STOCKHOLDER—PROOF TO ESTABLISH RELATION.

An entry of the name of a person in the stockbook of a bank as a shareholder, without proof of knowledge, assent, or confirmatory act on his part, is not sufficient to establish the relation to charge his estate after his death with a statutory liability as a stockholder.

In Error to the Circuit Court of the United States for the Eastern District of Pennsylvania.

Howard W. Page, for plaintiff in error.

E. Spencer Miller, for defendant in error.

Before ACHESON and GRAY, Circuit Judges, and BUFFINGTON, District Judge.

BUFFINGTON, District Judge. In the court below the plaintiff in error, George T. S. Foote, a judgment creditor of the Howard State Bank, a corporation of Kansas, brought suit against Joseph Anderson, executor of Eber Anderson, an alleged holder of 135 shares of its stock, to enforce a shareholder's double liability imposed by a statute of that state. The defense was that Eber Anderson was not a stockholder. At the conclusion of the testimony on the part of the plaintiff a compulsory nonsuit was entered, the refusal of the court to take which off is here assigned for error.

Examination of the testimony shows the case turns on the question whether the entry by the bank of the name of the decedent in its stockbook as a shareholder constitutes as against him evidence of ownership. The proofs were that in 1886, when the capital of the bank was $50,000, decedent owned 10 shares of its stock; that while the bank was solvent these shares were returned to it, were marked canceled, and were found in the book offered in evidence. It was also shown that the bank was subsequently reorganized by increasing its capital to $100,000, and certificates of stock to that amount issued; that it was again reorganized by increasing its capital to $150,000; and that subsequently it was reorganized as a corporation of Missouri with a capital of $150,000. At each of these reorganizations the former certificates were marked canceled. Other than the entries contained in the stockbooks of these reorganized issues, there was no proof that Anderson owned any stock except the original 10 shares, which, as noted, were canceled and surrendered during the solvency of the bank. No evidence was shown that he participated in any of these changes of capital. Lambert, the only witness called by the plaintiff to prove decedent's ownership, testified, "All the knowledge I have of the stock that Eber Anderson held in this corporation, outside of the one thousand dollars I sold him individually, is the records entirely." The decedent's executor was called by the plaintiff, and proved that in his effects he found no evidence or reference of any kind to ownership of stock. There was proof Anderson had at one time acted as a director, but the witness was unable to fix the time as being other than during his holding of the original 10 shares. It was also shown he signed some paper, which paper was not proved or its loss accounted for, agreeing to the change to the Missouri corporation, but it was also shown he was then a creditor of the company. Whether his action in that regard was as a creditor or shareholder was not proved.

Now, it is evident that the right of the plaintiff to recover depended on his establishing the relation of corporation and shareholder between Anderson and the bank. That relation was a contractual one;

if it existed, it was created by agreement of both corporation and shareholder. Such a contract may be express or implied, but it exists only when both parties have expressly consented to its creation, or have so acted that the law implies consent. It is clear that a corporation by its own act cannot make one its shareholder, nor can one make himself a shareholder without the consent of the corporation. The corporation may evidence its assent to the creation of the relation by placing on its books the name of one as a shareholder, and that act may evidence, as against the company, the contract, and a person, by knowledge of and acquiescence in such act, may be held a stockholder; but it is equally clear that, this relation being one based on mutual consent, neither party by its or his own separate act can create it. It requires assent of both to bind. If, now, the act of the corporation in placing one's name in its list of stockholders is accepted by the court as evidence that the person named is a shareholder, and if a jury is permitted to find a verdict based alone on proof of such act, it is clear that the so-called contract thus enforced is made for the defendant, not by his own act or consent, but by a rule of evidence. That such should be the case is contrary to our sense of right. The essence of a contract is consent to be bound. Contracts are enforced because they represent the undertakings of the contracting parties. Representing the agreements of the parties thereto, their sanctity is such that the federal Constitution forbids their impairment by the state. Assuredly the law which affords them this high regard, and prevents their impairment because they represent the assent of the contractors, should not by a rule of evidence force into a contract one who has given no consent or done no act or omitted to do nothing from which consent could be implied. If, however, the act of the corporation alone in entering one's name as a stockholder is evidence of a contract, it is clear that the law by its rule of presumption, and not the party by his act or will, has created the alleged contract. We cannot sanction any course which thus dispenses with the element of consent, express or implied, as the basis and groundwork of a contract. Moreover, to make the entry by the corporation evidence for itself is contrary to the rule that self-made evidence will not avail. 2 Phillips, Evidence, 122. Indeed, the intolerable effect of such a holding is shown in this case, where death has closed the mouth of the alleged shareholder, and his estate is deprived of the evidence of the only witness who could rebut the presumption of ownership raised by the entry. We are therefore of opinion the entry in the bank books here offered, without any accompanying proof of knowledge, assent, or confirming act on the part of the decedent, was not evidence to hold his estate as a shareholder. In Bain v. Whitehaven, 3 Cases House of Lords, 22, the admission of such books to charge one as a stockholder was justified only by reason of statutory authority so empowering. It was there conceded by Lord Brougham that, to constitute such entries evidence, there must be a compliance with the statutory provisions, since, apart from those provisions, they were not evidence. He there said:

"A great privilege is bestowed by the act upon the company, neither more nor less than that of making evidence for itself. The books of the company are made evidence for the company, and, unless rebutted by counter evidence,

will be sufficient to warrant a verdict in each case. It must be admitted that this is a very great privilege, and an exception to the ordinary rule of evidence. By those rules, and the rules of common sense and justice, what a man writes is evidence against him, but not evidence in his favor; but here the proposition is reversed. So that the company, by writing in the books that 'A. B. holds' a certain number of shares, can go into court and make A. B. answerable for them, and can produce the entry as evidence against him. This is a great privilege, and, in order to justify the exercise of it, the conditions on which it is given, namely, the provisions of the statute as to the making of these entries, must be strictly complied with; and I hold that it is much safer to consider each of those provisions as a condition precedent, as a provision imperative, and not merely directory, on account of the great importance of the privilege itself, and on account of its being an exception to all ordinary rules of evidence."

This view has the support of text-writers who have discussed it on principle (Thompson on the Law of Contract, § 7732; Taylor on Evidence, § 1781), and of authoritative decisions (Hinsdale v. New Hampshire Banking Co., 59 Kan. 716, 54 Pac. 1051, 68 Am. St. Rep. 391—a decision here entitled to especial regard as expressive of the effect given such entries by the court of highest resort of the state creating the corporation in question; Carey v. Williams, 79 Fed. 906, 25 C. C. A. 227; Sigua Iron Co. v. Greene, 88 Fed. 207, 31 C. C. A. 477; Hayden v. Williams, 96 Fed. 279, 37 C. C. C. 479; Express Co. v. Norris, 15 App. D. C. 262). It is true the opposite doctrine is laid down in several text-books, and in many cases, state and federal, which might be cited. In none of the text-books do we find any reason given for such holding, or any discussion of the principle involved. They, as well as most of the authorities, simply state the law, and base it on the language of Mr. Justice Clifford in Turnbull v. Payson, 95 U. S. 420, 24 L. Ed. 437, that:

"Where the name of an individual appears on the stockbook of a corporation as a stockholder, the prima facie presumption is that he is the owner of the stock, in a case where there is nothing to rebut that presumption; and, in an action against him as a stockholder, the burden of proving that he is not a stockholder, or of rebutting that presumption, is cast upon the defendant."

An examination of that case shows that that question was not there involved. The entry in the stockbook was supported by proof that the shareholder paid 20 per cent. on his stock, and a receipt signed by him for a dividend thereon was given in evidence. It was in reference to all these facts collectively the language quoted was used, for it was preceded by the statement that, "taken as a whole, it is clear that the evidence offered was amply sufficient to warrant the jury in finding that the defendant was a stockholder as alleged," and followed by the expression that, "satisfactory proof having been exhibited that the company was duly incorporated and organized, it follows that the receipt of dividend upon the shares standing upon the books of the company in the name of the defendant, when taken in connection with the other evidence introduced by plaintiff, is conclusive to show that the assignment of error in that regard should be overruled." But not only was the question of the effect to be given the stockbook, when standing alone, not before that court, but, if the language used is regarded as decisive of that question, the authorities cited do not sustain it. In one of them, Mudgett v. Horrell, 33 Cal. 25, a statute of Cali-

fornia made the books presumptive evidence, and Coffin v. Collins, 17 Me. 440, is to its extent an adverse authority, since it holds that the naming of one in an act of incorporation does not prove assent or acceptance thereof, and that there must be proof of actual membership before the party to be affected can be made liable. Merrill v. Walker, 24 Me. 237, is a miscitation, as it has no bearing on the question. The reference evidently was to the next case in the volume, Whitman v. Church, which holds that corporation books, when proved to be such, constitute evidence against the company. Hamilton & D. P. R. Co. v. Rice, 7 Barb. 158, merely decides that in a suit against a stockholder a corporate resolution is evidence of a call. The only one sustaining the doctrine is Hoagland v. Bell, 36 Barb. 57, in which there is no discussion of the principle involved, or no authority cited or reason advanced in support of the conclusion. It is true the language noted above from Turnbull v. Payson was quoted in extenso in Finn v. Brown, 142 U. S. 56, 12 Sup. Ct. 136, 35 L. Ed. 936, but the question of the effect of the books, standing alone, was not involved in that case. There the entries in the books were supplemented by the fact that Finn was acting as cashier, and as such he was required by statute to keep a list of shareholders, and therefore he was presumed conclusively to know that such list named him as a shareholder, and that he had qualified as director, which he could not do without making an affidavit that he was a shareholder.

In view, therefore, of the fact that the question here involved was not before the Supreme Court in either of the two cases cited, and in the absence of any other binding authority, we regard the question as an open one. So regarding it, we are of opinion that sound reasoning, an observance of the fundamental principles of evidence, and the inherent justice of such a course necessitate the conclusion that the entries of ownership of stock made by the bank in its own books, without any evidence of knowledge thereof on the part of the decedent, or any assertion or act of ownership on his part, are not evidence of ownership by him, and such conclusion is in accord with the views of the Supreme Court in Keyser v. Hitz, 135 U. S. 149, 10 Sup. Ct. 290, 294, 33 L. Ed. 531, where it was said:

"We must not be understood as saying that the mere transfer of the stocks on the books of the bank to the name of the defendant imposed upon her the individual liability attached by law to the position of shareholder in a national banking association. If the transfers were in fact without her knowledge or consent, and she was not informed of what was so done—nothing more appearing—she would not be held to have assumed or incurred liability for the debts, contracts, and engagements of the bank."

So holding, the action of the court is approved, and its judgment affirmed.