[L. A. No. 1394.   Department Two.—August 28, 1905.]

## G. S. WELCH, Appellant, v. WARREN GILLELEN, Respondent.

CORPORATIONS—LIABILITY OF STOCKHOLDERS—BOOKS AS EVIDENCE—CONSTRUCTION OF CODE—PRESUMPTION NOT CONCLUSIVE.—Section 322 of the Civil Code is to be construed as importing that one who knowingly and voluntarily permits his name to appear on the books of a corporation as a stockholder when debts are contracted is liable as a stockholder, and as creating a presumption merely which is not conclusive, but may be controverted by evidence that the apparent owner on the books did not consent to become a stockholder, and that the issuance of the stock in his name as an individual was unauthorized.

ID.—EVIDENCE OF PLEDGE — STOCK ISSUED AGAINST INSTRUCTIONS — TEMPORARY RETENTION—RATIFICATION.—Although one may ratify stock issued to him without authority, by unreasonable retention of the same, so as to become liable as a stockholder, yet where it is conclusively shown that defendant never subscribed for stock, but took it as a pledge for money loaned, and immediately demanded the issuance of stock to him as pledgee, and it was transferred to his own name by mistake of the secretary in violation of instructions, and defendant immediately demanded, and with reasonable diligence secured a correction of the error, the temporary retention of the stock pending the correction demanded does not establish a ratification.

ID.—DUTY OF SECRETARY—ENTRY UPON BOOKS.—When the secretary was notified that defendant held the stock as pledgee it was his duty to notify that fact upon the transfer and stock books, and if he had so done, the form of the certificate held was not material.

ID.—MISTAKE IN TRANSFER—DELAY IN CORRECTION—LACHES NOT IMPUTABLE.—Where a delay in the correction of the mistake of the secretary in the transfer of the stock was caused by the supposed necessity of securing the signature of an absent officer, the expiration of four weeks before securing it, after demand of the

defendant, who repudiated ownership of the stock and was diligently urging the correction, which the secretary was willing to make, cannot be imputed as laches.

APPEAL from a judgment of the Superior Court of Los Angeles County and from an order denying a new trial. M. T. Allen, Judge.

The facts are stated in the opinion of the court.

Graves, O'Melveney & Shankland, Lawler & Allen, and Oscar A. Trippett, for Appellant.

The defendant was liable as a stockholder by the showing upon the books, and evidence was not admissible to show the contrary. (Civ. Code, sec. 322; *Baines* v. *Babcock,* 95 Cal. 581, 593, 29 Am. St. Rep. 159, 27 Pac. 674, 30 Pac. 776; *Walter* v. *Merced etc. Assn.,* 126 Cal. 582, 585, 59 Pac. 136; *O'Connor* v. *Witherby,* 111 Cal. 529, 44 Pac. 227; *Abbott* v. *Jack,* 136 Cal. 510, 69 Pac. 257; *Germania Nat. Bank* v. *Case,* 99 U. S. 628; *Pullman* v. *Upton,* 96 U. S. 328; *Rosevelt* v. *Brown,* 11 N. Y. 148; Thompson on Liability of Stockholders, sec. 223; *Morse* v. *Pacific Ry. Co.,* 93 Ill. App. 35.)

Borden & Carhart, for Respondent.

One whose name appears upon the books as a stockholder without his consent is not liable. (*Mudgett* v. *Horrell,* 33 Cal. 25; *In re Reciprocity Bank,* 22 N. Y. 17; *Glenn* v. *Garth,* 133 N. Y. 18, 30 N. E. 649, 31 N. E. 344; *O'Connor* v. *Witherby,* 111 Cal. 529, 44 Pac. 227; Clark & Marshall on Corporations, vol. 3, secs. 795, 816.) It may be shown that the stock was a mere pledge. (Civ. Code, sec. 322; *Matthews* v. *Arnold,* 24 Md. 527; *McMahon* v. *Mary,* 51 N. Y. 155; *Burgess* v. *Seligman,* 197 U. S. 20; *Union Sav. Assn.* v. *Seligman,* 92 Mo. 635, 1 Am. St. Rep. 976.) The failure of the secretary to do the duty required of him to protect the defendant cannot prejudice the defendant. (*May* v. *Genesee Bank,* 120 Mich. 330, 79 N. W. 630; *Glenn* v. *Garth,* 133 N. Y. 18, 30 N. E. 649, 31 N. E. 344.)

LORIGAN, J.—This action is brought by a creditor of the Ivanpah Smelting Company, a California corporation, to recover from the defendant his proportionate liability as a

stockholder of said corporation under section 322 of the Civil
Code.

Judgment was rendered in favor of defendant, and from
said judgment and the order denying his motion for a new
trial plaintiff appeals.

The evidence shows that Blasdel and Sisson purchased cer-
tain stock of the Ivanpah Smelting Company, and to make
payment therefor borrowed from defendant, the president of
the Broadway Bank and Trust Company of Los Angeles,
moneys sufficient to meet the purchase price, and as collateral
security for the loan certificates of stock in said corpora-
tion, representing in all nine hundred and eight shares, were
indorsed by him to defendant.

Blasdel subsequently died, and Sisson being interested in
the stock indorsed by Blasdel to defendant as collateral, in-
sisted that defendant should return said certificates to the
corporation, and have reissued to him in place thereof, a cer-
tificate showing the true nature of the transaction under
which he held them,—namely, that he held them in pledge.

In conformity with this request, defendant, on February
27, 1902, called at the office of the Ivanpah Smelting Com-
pany in Los Angeles City and presented to, and left with the
secretary of the company, the various certificates indorsed to
him by Blasdel, and requested the secretary to make out a
new certificate in his name as pledgee. On the evening of
that day he told the cashier of the bank to call at the com-
pany's office and bring back the new certificate which he had
asked the secretary to issue.

The secretary of the company, in violation of the instruc-
tions defendant had given him, and without any authority,
issued a certificate in the ordinary form in favor of the de-
fendant individually, without it showing that he held the
stock as pledgee, and upon the record books required by law
to be kept the secretary made an entry showing the issuance
of such an individual certificate. Neither the certificate nor
any of the books recited or indicated the true character un-
der which he held the stock. The cashier of the bank, having
no knowledge of the directions given by the defendant to the
secretary as to the kind of certificate he desired issued, re-
ceipted for the form of certificate delivered to him by the
secretary and returned with it to defendant.

Defendant, discovering the error in the certificate, went the next day to the secretary, called his attention to the error, and asked him to correct it by inserting in the certificate the word "pledgee," as he had in the first instance requested him to do. The secretary said he could not make the change on account of the other officers of the corporation not being present. Within a week afterwards defendant again called on the secretary to have a new certificate issued showing the true nature of the transaction, and was again told that owing to the absence of the vice-president of the company (the president being dead) he could not issue it until the vice-president was present to sign it. At this visit the defendant tendered the secretary the erroneous certificate for correction, but on his statement that he could not correct it until the vice-president came to the office (which the evidence shows was at uncertain intervals) defendant retained the certificate and placed it with his papers in the bank. He spoke to the secretary several times upon the subject of issuing a new certificate to correct the old one, receiving the same assurance that it would be done when an officer came in. Nothing was in fact done to that end till May 15, 1902, when the secretary cancelled the erroneous certificate, issued to the defendant another certificate showing the true character in which he held the stock—as pledgee—and made the proper entry upon the books of the corporation.

The defendant never subscribed for any stock in the Ivanpah Smelting Company, nor did he in fact own any stock in it. He attended no meetings of the board of directors of the corporation, participated in no transactions in which the corporation was involved, received no dividends, nor did any act asserting a stockholder's right in the corporation.

There is no question in the case but that upon his first visit to the secretary of the corporation the defendant requested him to make out the certificate which he desired issued to him so as to show that he held the stock as a pledge. The failure of the secretary to do so is doubtless attributable to the fact that he was hard of hearing and did not understand the directions of defendant, and, as the certificates indorsed by Blasdel to the defendant indicated on their face an absolute transfer of the stock to him, the secretary in issuing a certificate upon surrender thereof assumed that it was to be made in favor of the defendant individually, and so issued it.

The credit extended to the Ivanpah Smelting Company sued upon in this action was given between March 1 and March 24, 1902, a considerable portion within sixteen days after the issuance of the erroneous certificate to the defendant by the secretary, and all of it within four weeks thereafter.

These constitute the material facts in the case.

It is first insisted by appellant, notwithstanding the evidence without contradiction shows that respondent never was in fact the owner of any stock in the Ivanpah Smelting Company, and his name was entered on the books of the corporation and the certificate made out in his name as a stockholder without authority and against his express directions, that nevertheless he was in law a stockholder under section 322 of the Civil Code of this state, which declares one to be a stockholder whose name appears upon the books of the corporation as such. And in this connection it is insisted that the mere appearance of his name on the books as a stockholder is conclusive of his liability.

There is, however, nothing in the section which makes the entry on the books conclusive on the subject. It simply says that one shall be deemed a stockholder whose name appears on the books as such. While this language is quite broad, it must be interpreted in harmony with justice, and in accord with the rule which universally applies as to the effect which is to be given to entries in corporate books purporting to show who are the stockholders of a corporation. When the section declares that one shall be liable as a stockholder who appears upon the books to be such it means one who knowingly or voluntarily permits his name to appear thereon as a stockholder. When it so appears the presumption is that he occupies the relation to the corporation which the books indicate. The entry is, however, not conclusive, but presumptive merely. This is the general rule, and there is nothing in the terms of our section to take this case out of it.

The general construction of the section in question contended for by appellant, if it were sustained, would necessarily preclude one from showing that while upon the face of the corporate books he appeared to be a stockholder, yet in fact he was not; that he had never owned or subscribed for any stock or authorized the issuance of any to him by the corporation. A construction which would lead to this result

cannot seriously be considered. The relation of stockholder to a corporation is one of contract, either express or implied. It only exists when a party has either expressly consented to become a stockholder, or his conduct is such that in law his consent will be implied. He cannot be made a stockholder and liable to the creditors of a corporation without his consent, simply because an officer of the corporation has without authority, or in direct violation of his instructions, entered his name upon the books of the corporation as a stockholder and caused stock to be issued in his name as such. Nor does the entry of his name in the books as a stockholder preclude him from showing that in fact he was not a stockholder, and that the issuance of stock in his name was unauthorized. (*Mudgett* v. *Horrell,* 33 Cal. 25; *O'Connor* v. *Witherby,* 111 Cal. 529, [44 Pac. 227]; *Hunt* v. *Seeger,* 91 Minn. 264, [98 N. W. 91]; *May* v. *Genesee Bank,* 120 Mich. 330, [79 N. W. 630]; *Glenn* v. *Garth,* 133 N. Y. 18, [30 N. E. 649, 31 N. E. 300]; *Foot* v. *Anderson,* 123 Fed. 659, [61 C. C. A. 5]; Clark & Marshall on Private Corporations, secs. 795, 816, 819.)

Now, within this rule, as the evidence conclusively shows that there was no express consent on the part of respondent to become a stockholder, that he intended merely to have the books of the corporation show the true condition under which he held the stock,—as pledgee,—and that the issuance to him individually of the certificate and the entry of his name on the corporate books as a stockholder, were without authority on the part of the secretary, and against his express instructions, the judgment of the lower court was right, unless the further point made by appellant can be sustained.

In that regard he insists that, notwithstanding the want of authority in the secretary to enter the name of respondent in the corporate books as a stockholder, or to issue the certificate to him individually, and that these things were done against his express instructions, yet by accepting and retaining the certificate he ratified the action of the secretary, and by failing to use ordinary diligence to have his apparent relation as stockholder to the corporation effaced on the corporate books and changed in the certificate he is estopped as against creditors from disclaiming that he is a stockholder.

The legal propositions suggested by appellant in this contention are sound, but the evidence does not warrant their application.

There is no evidence in the case tending to show ratifica-
tion. The retention by respondent of the erroneous certificate
did not have that effect. It was offered to the secretary for
correction, and upon his refusal to correct it until the vice-
president came in the respondent temporarily retained it.
This retention had no significance as evidence of ratification
in view of its production at all times to the secretary for cor-
rection, and the persistent disavowal and repudiation of it by
respondent as not being the certificate which he had requested
to have issued, and which he at all times insisted on having
corrected.

Nor is there anything showing the respondent guilty of
laches in failing to have a change of the entries in the books
of the corporation made after discovery of the error com-
mitted by the secretary in issuing the certificate. We speak
of changes in the entries on the books as something distinct
from the change in the erroneous certificate, because the case
of *Spreckels* v. *Nevada Bank*, 113 Cal. 272, [54 Am. St. Rep.
348, 45 Pac. 329], indicates quite clearly that all a pledgee is
entitled to demand of the corporation is an entry upon its
books showing the true character under which he holds the
stock, and that he is not entitled to the issuance of a certifi-
cate of stock indicating that character. In the case at bar,
both the respondent and the secretary thought that the
proper method to pursue was to issue a new certificate on sur-
render of the old one. This belief, however, is not of much
importance. When the respondent presented the old certifi-
cate, and requested the secretary to issue him a new certificate
as pledgee, it was the duty of the secretary, under the rule
laid down in *Spreckels* v. *Nevada Bank,* 113 Cal. 272, [54 Am.
St. Rep. 348, 45 Pac. 329], notwithstanding he thought it
proper to issue a new certificate, to have made, in addition to
such issuance, proper entries on the transfer and stock books
showing that the stock was held by respondent as collateral
security. No matter in what form he might have issued the
new certificate to the respondent, it was the duty of the secre-
tary to have made the proper entries in the corporate books
so as to show the true relation of respondent to the stock,
which was the declared purpose respondent had in view when
he called on him to issue the new certificate. If this had been
done this trouble could not have arisen. The true nature of
CXLVII. Cal.—37

the transaction would then have properly appeared upon the corporate books, and the form of the certificate would have been immaterial.

Now, to return to the matter of laches. The respondent certainly made prompt effort to have the error committed by the secretary in the issuance of the certificate corrected, and was persistent in his efforts in that behalf, from the date of the discovery of the error up to the time of correction. If he had permitted any unreasonable time to elapse after the discovery of the error before he sought to have the mistake rectified, there would be some excuse for the claim that he was negligent; but the evidence discloses nothing of the kind. He seems to have been actively insistent during the whole time in having his true relation to the stock correctly appear upon the books of the company. It is apparent, as a fact, that respondent never held himself out as a stockholder, or that he had any intention of doing so. The most that can be urged against him is, that, relying upon the assurance of the secretary of the corporation that the error which had been made would be corrected when the vice-president came in, and the proper certificate could be signed by him, he for the period in March during which credit was extended by appellant to the corporation, permitted the secretary to erroneously hold him out as a stockholder. This, however, was not respondent's fault. He promptly disavowed ownership in the stock, and was continually seeking to have the error corrected, and his true *status* disclosed upon the books, as he was promised it should be.

It is insisted by appellant that respondent should have applied to the court for a writ of mandate to compel the secretary to perform his duty. But in making such an application it would have been necessary to aver that the secretary had refused on demand to make the proper entry. This the secretary never did refuse to do. Both of the parties, it is true, were honestly in error as to what was necessary to be done in order to effect the change. They assumed that the issuance of a new certificate was required, when all that was in fact necessary was for the secretary to make the proper entries in the books. But whatever was necessary the secretary had not refused to do. On the contrary, he promised to have the correction made, as it was believed it should be, by having a new

certificate issued when the vice-president was present to sign
it. The respondent had a right to rely upon this promise and
the apparent willingness on the part of the secretary to have
the error corrected, without being driven to the necessity and
expense of appealing to the courts for redress. It was ex-
pected by both parties that this error would be corrected
more speedily than it was, but the simple fact that it was
delayed somewhat longer than was anticipated we do not
think, under all the circumstances disclosed in the case, would
warrant holding that there was an unreasonable delay in
accomplishing it. It is not pretended that appellant had any
knowledge that respondent appeared on the books as a stock-
holder, or that in fact credit was extended to the corporation
on the faith of his appearance on the books as such. Nearly
one half of the indebtedness against the corporation was cre-
ated the next day after the respondent discovered the error
committed by the secretary in the issuance of the new certifi-
cate, and the rest of the indebtedness within twenty-five days
thereafter. Certainly no laches could be charged against re-
spondent in not having brought an action before the earlier
part of the indebtedness was created, and if brought at any
later period in March it would have been hardly possible to
have obtained an alternative writ, a hearing, and the award
of a peremptory writ between the discovery of the commis-
sion of the error in issuing the certificate and the creation of
the indebtedness sued on. Under such circumstances the ap-
pellant could hardly be heard to say that he was injured by
the delay even if it was not otherwise excusable. Whether
laches exists or not is to be determined from the facts and
circumstances surrounding each particular case. There can
be no inflexible rule laid down. One whose name is placed
upon the corporate books as a stockholder without authority
must be extended reasonable time within which to have the
erroneous entry corrected, and it cannot be said in the case at
bar that the delay of four weeks in accomplishing that result
was unreasonable so as to constitute laches.

The authorities cited by appellant to sustain his general
contention in this case have no application. In those cases
the party asserting that he was not a stockholder and so en-
deavoring to avoid liability to creditors of the corporation,
had either knowingly and voluntarily assumed that position

upon the books of the corporation, or, if he had not originally
done so, yet from his conduct in dealing with the stock certifi-
cates issued to him, or with the corporation after the knowl-
edge of the issuance of the stock to him, was estopped from
repudiating that relationship.

In *Baines* v. *Babcock,* 95 Cal. 593, [29 Am. St. Rep. 158, 27
Pac. 674, 30 Pac. 776], and *Arthur* v. *Hurlburt,* 140 Cal. 103,
[98 Am. St. Rep. 17, 73 Pac. 734], relied on by appellant, it
appears that the defendants there were within the class of
those who knowingly and voluntarily assumed the relation-
ship.  In the one case Babcock was not an owner as to part
of the stock standing in his name, but held it for the accomo-
dation of others, and in the other case Miller, while the books
showed that he was an individual stockholder, in fact held
the stock as collateral security.

In *O'Connor* v. *Witherby,* 111 Cal. 529, [44 Pac. 227], and
*Abbott* v. *Jack,* 136 Cal. 510, [69 Pac. 257], while the defend-
ants claimed that they had never authorized the issuance of
any stock in their names, they were nevertheless held es-
topped, by their conduct in dealing with the certificates issued,
from asserting as against the creditors of the corporation that
they were not stockholders.

It will be readily seen upon an examination of those cases
that they have no application here.  Respondent in the case
at bar, as we have seen, neither authorized the issuance of
the stock in question to him individually, nor did any act after
it was erroneously issued which would estop him from show-
ing that its issuance was unauthorized and that in fact he
never was a stockholder, or liable to the creditors of the cor-
poration as such.

The judgment and order appealed from are affirmed.

McFarland, J., and Henshaw, J., concurred.