[L. A. No. 2228.  Department One.—December 23, 1908.]

## SHATTUCK AND DESMOND WAREHOUSE COMPANY (a Corporation), Appellant, v. WARREN GILLELEN, Respondent.

CORPORATION—LIABILITY OF STOCKHOLDERS—WHO ARE STOCKHOLDERS OF RECORD.—The provision of section 322 of the Civil Code, fixing the liability of stockholders for the debts of the corporation, and including within the definition of stockholders "such persons as appear by the books of the corporation to be such," should be construed so as to limit it to persons who knowingly or voluntarily permit their names to appear as stockholders

ID.—PLEDGEE OF STOCK—UNAUTHORIZED ISSUANCE OF STOCK IN NAME OF PLEDGEE.—A pledgee of stock cannot be made a stockholder and liable to the creditors of a corporation without his consent, simply because an officer of the corporation has without authority, or in direct violation of his instructions, entered his name upon the books of the corporation as a stockholder and caused stock to be issued in his name as such. Such entry does not preclude him from showing that in fact he was not a stockholder, and that the issuance of stock in his name was unauthorized.

ID.—WELCH v. GILLELEN, 147 CAL. 571, AFFIRMED—LACHES.—*Welch* v. *Gillelen*, 147 Cal. 571, affirmed on the question that the defendant was not a stockholder in the corporation in question, and was not guilty of laches in failing to have a change of the entries in the books of the corporation after discovery of the error committed by the secretary in issuing the certificate.

ID.—ABSOLUTE INDORSEMENT BY PLEDGOR—ESTOPPEL.—An indorsement by the pledgor of certificates of stock, purporting to transfer them absolutely to the pledgee, does not authorize the secretary of the corporation, in the face of express instructions to the contrary, to assume that the transfer was absolute, nor justify him in issuing a new certificate in the name of the pledgee as owner, and entering him as a stockholder on the books of the company. The rule forbidding parol evidence to vary or alter the terms of a written contract does not preclude such a pledgee from showing his true relation to such stock. In the present case, there is nothing in the evidence to estop the defendant from showing that he was a mere pledgee.

APPEAL from a judgment of the Superior Court of Los Angeles County and from an order refusing a new trial. Walter Bordwell, Judge.

The facts are stated in the opinion of the court.

Oscar A. Trippet, for Appellant.

Borden & Carhart, for Respondent.

ANGELLOTTI, J.—This is an appeal by plaintiff from a judgment for defendant and an order denying a motion for a new trial. The action is one brought upon a note given on April 15, 1902, to one E. S. Shattuck by the Ivanpah Smelting Company (a corporation), and transferred to plaintiff, to recover from the defendant his proportionate liability as a stockholder of said Ivanpah Smelting Company, it being alleged that when the indebtedness to evidence which said note

was given was created, and at the time of the giving of said note, defendant was the owner, and appeared on the books of said corporation as the owner, of 908 shares of the 954 shares of the corporate stock subscribed for.

The principal portion of the indebtedness evidenced by the note grew out of a contract entered into between Shattuck and the Ivanpah Smelting Company on February 1, 1902, under which Shattuck was to furnish the company men, wagons, and horses for at least six months at seventy-five dollars per day. Between that date and April 15, 1902, there had become due under this contract and for certain merchandise and services furnished and rendered outside thereof, less credits amounting to $429.43, the sum of $3041.16, and on April 15, 1902, the contract was abrogated by the parties, with the understanding that Shattuck should be allowed $4450 in addition to what was due, as liquidated damages for the failure of the company to complete its contract. These two amounts, the $3041.16 due, and the $4450 allowance for damages, make up the amount of the note, $7491.16. There is some question whether this compromise as to damages and the giving of the note therefor was in fact authorized by the corporation, but we may assume for the purposes of this decision that it was.

The trial court found that defendant was not a stockholder of the Ivanpah Smelting Company at any time prior to February 11, 1904, when he acquired title to said 908 shares by purchase at a judicial sale in proceedings to foreclose a pledge. It further found the probative facts upon which it based its conclusion that he was not a stockholder within the meaning of our constitutional and statutory provisions relative to the liability of stockholders of corporations for the debts thereof. There is no material difference between the facts so found and the facts stated in the opinion of this court in *Welch* v. *Gillelen,* 147 Cal. 571, [82 Pac. 248], a similar action by a creditor of the Ivanpah Smelting Company against this defendant, on account of his alleged ownership of these shares of stock. Briefly stated, these facts are as follows:—

Defendant never, in fact, owned any portion of this stock prior to his purchase thereof in the year 1904. From some time in the year 1901 to the time of such purchase he held it purely by way of pledge, to secure the payment of money advanced by him to the owners for the purchase thereof by

them.  One Blaisdell and one Sisson were the owners, the certificates therefor being issued to Blaisdell.  At the time that the stock was so pledged to him, the certificates therefor were indorsed and delivered by Blaisdell to defendant, the indorsement not showing that the transaction was only a pledge.  Defendant retained these certificates until February 27, 1902, when, Blaisdell having died, defendant, on Sisson's request, for the purpose of having the record show the real transaction between defendant and the owners, deposited the pledged certificates with the secretary of the company with the direction to said secretary to issue to him a new certificate in his name as pledgee, which implied, of course, a direction that the secretary should also make a proper entry on the books of the corporation of the fact that he held the stock as pledgee, as the court found.  The secretary, in violation of these instructions and without any authority in that behalf and without the knowledge of defendant, issued a new certificate for this stock to the defendant, which on its face showed him to be the owner thereof, and made an entry in the record books of the company which likewise showed him to be the owner, instead of a mere pledgee.  This certificate was receipted for by an employee of defendant and taken to defendant, who at once discovered the error therein.  He immediately went to the secretary, and demanded that his previous instructions be complied with.  The secretary never refused to rectify the matter, but put the defendant off on the plea that the matter could not be rectified in the absence of the vice-president of the company, and that the matter would be attended to as soon as the signature of the vice-president could be obtained.  Defendant frequently thereafter renewed his said demands on the secretary, receiving like responses, until on May 15, 1902, in compliance with a written demand made by defendant's attorneys, the matter was remedied by a cancellation of the certificate, the issuance of a new certificate to defendant as pledgee, and the making of an entry on the books of the company showing defendant to be the holder of this stock as a pledgee only. While retaining the erroneous certificate during all this time, defendant never acquiesced therein, and never did any act asserting a stockholder's right in the corporation.  Previous to April 15, 1902, Shattuck had no information tending to lead him to believe that defendant appeared on the books of the

corporation as the owner of this stock, but discovered that fact on the last-named day before accepting the note. There was absolutely nothing to indicate that defendant had any reason to suspect that Shattuck had such knowledge, or relied thereon at all in any of his transactions with the corporation. Upon these facts the trial court concluded that defendant was not liable as a stockholder for the payment of said note or any part thereof, and that, as to plaintiff and its assignor, he was not guilty of such laches or of such conduct as would estop him in this action to deny his true relation to the stock held by him.

As we have said, there is no material difference between the facts of this case and those of *Welch* v. *Gillelen,* 147 Cal. 571, [82 Pac. 248]. The real effort of learned counsel for appellant appears to us to be to induce a modification of the views expressed by the court in that case as to the law applicable to these facts. An examination of the authorities relied on by counsel in this behalf discloses to us no satisfactory reason for any such modification. The rule invoked by him, which is thoroughly established by the decisions of this court, that, under section 322 of our Civil Code, a pledgee who allows himself to appear upon the books of a corporation as the owner of the pledged stock is to be deemed to be the owner thereof for all the purposes of section 3 of article XII of the constitution and section 322 of the Civil Code, (*Hurlbut* v. *Arthur,* 140 Cal. 103, [98 Am. St. Rep. 17, 73 Pac. 734]; *Baines* v. *Babcock,* 95 Cal. 581, [29 Am. St. Rep. 158, 27 Pac. 674, 30 Pac. 776]), is fully recognized by that decision. The provision of section 322 of the Civil Code, in this regard, as construed in *Hurlburt* v. *Arthur,* 140 Cal. 103, [98 Am. St. Rep. 17, 73 Pac. 734], is that the term "stockholder" as used therein applies "to such persons as appear by the books of the corporation to be such," and that stock held as collateral security, etc., does not make the holder a stockholder except when he appears by the books to be such. This rule, we say, is fully recognized in *Welch* v. *Gillelen,* 147 Cal. 571, [82 Pac. 248], but it is further held, in accord with what appears to us to be the only rational construction of the section, that the language "such persons as appear by the books," etc., must be limited to persons who knowingly or voluntarily permit their names to appear as stockholders. Upon this point we quote from the

opinion: "The general construction of the section in question contended for by appellant, if it were sustained, would necessarily preclude one from showing that while upon the face of the corporate books he appeared to be a stockholder, yet in fact he was not; that he had never owned or subscribed for any stock or authorized the issuance of any to him by the corporation. A construction which would lead to this result cannot seriously be considered. The relation of a stockholder to a corporation is one of contract, either express or implied. It only exists when a party has either expressly consented to become a stockholder, or his conduct is such that in law his consent will be implied. He cannot be made a stockholder and liable to the creditors of a corporation without his consent, simply because an officer of the corporation has without authority, or in direct violation of his instructions, entered his name upon the books of the corporation as a stockholder and caused stock to be issued in his name as such. Nor does entry of his name in the books as a stockholder preclude him from showing that in fact he was not a stockholder, and that the issuance of stock in his name was unauthorized." The decisions relied on by the appellant in that case were shown to be cases where the party asserting that he was not a stockholder, had either knowingly and voluntarily assumed that position upon the books of the corporation, or, if he had not originally done so, had by his subsequent conduct estopped himself from denying the relationship.

What is said in *Welch* v. *Gillelen,* 147 Cal. 571, [82 Pac. 248], on the question of laches in failing to have made a change of the entries in the books of the corporation after discovery of the error committed by the secretary in issuing the certificate is equally applicable here. The sum of this was that under the circumstances defendant proceeded with all reasonable diligence to have the matter rectified, until it was so rectified on May 15, 1902.

Learned counsel for appellant appears to maintain that, in view of the indorsement on the back of the pledged certificates, signed by Blaisdell, purporting to transfer them absolutely to defendant, the secretary of the corporation was bound to treat the transaction as a transfer of the ownership of the stock, and issue a certificate and make an entry on the books as though it were such a transfer, and that defendant by the

delivery to the secretary of such certificate so indorsed directed the doing of just what the secretary did. We are unable to assent to this. The indorsements did not necessarily mean that defendant was taking the title other than as a mere pledgee. (See *Hall* v. *Cayot,* 141 Cal. 13, 17, [74 Pac. 299].) Taking them as showing on their face an absolute transfer of the stock by Blaisdell to defendant, the rule forbidding parol evidence to vary or alter the terms of a written contract (Code Civ. Proc., sec. 1856) has no application, 1. Because that rule applies only as between the parties to a contract, their representatives or successors in interest (*Dunn* v. *Price,* 112 Cal. 46, [44 Pac. 354], and 2. Because it is always open even to the parties to what purports to be an absolute transfer of property, real or personal, to show by parol that the transfer was made solely by way of security, and that the transaction was in fact a mortgage or pledge. The secretary of the corporation was not warranted in assuming, in the face of the positive instructions of defendant, that the transaction between Blaisdell and defendant was anything more than a pledge, he had no right in view of those directions to issue a new certificate to defendant as owner and to make it appear on the books of the corporation that he was such owner, and defendant was fully warranted in assuming that his instructions would be followed and that no such certificate would be issued and no such entry made.

We find nothing in the record that will warrant us in holding that the trial court erred in concluding that defendant was not estopped by his conduct to show his true relation to this stock. There was nothing in Shattuck's acts or in any circumstance of which defendant had knowledge, tending to indicate to defendant that Shattuck was dealing with the corporation under the belief that he, defendant, was a stockholder, and he never said or did anything calculated to mislead Shattuck in that regard.

There is no other matter discussed in the briefs that requires notice.

The judgment and order are affirmed.

Shaw, J., and Sloss, J., concurred.