[No. 15708.   Department Two.—June 10, 1895.]

# PACIFIC FRUIT COMPANY, APPELLANT, *v.* F. H. COON, RESPONDENT.

CORPORATIONS—ACTION FOR ASSESSMENT EXCEEDING TEN PER CENT OF STOCK—BURDEN OF PROOF—PRESUMPTION.—In an action by a private corporation organized in this state for commercial and manufacturing purposes, to recover an assessment which exceeds ten per cent of the capital stock of the corporation, the burden of proving a valid assessment is on the plaintiff; and where there is no evidence to prove that its subscribed capital stock had not been fully paid, an assessment exceeding ten per cent of the amount of the capital stock named in the articles of incorporation must be presumed to be void, and cannot be enforced.

ID.—SUBSCRIPTION TO STOCK—CANCELLATION OF UNISSUED CERTIFICATE—POWER OF DIRECTION.—The cancellation of an unissued certificate of stock does not effect a cancellation of the subscription for such stock; and such subscription cannot be canceled, even by order of the board of directors, without the unanimous consent of all the stockholders, except for fraud or mistake.

ID.—OWNERSHIP OF STOCK—ASSESSABILITY.—The issuance of a certificate of corporate stock is not necessarily preliminary to the ownership or assessability of stock.

ID.—TESTIMONY AS TO AMOUNT OF ASSESSABLE STOCK—BOOKS OF CORPORATION.—The testimony of the secretary of the corporation as to the amount of the outstanding assessable stock, based upon the books of the corporation as understood by the witness, may be properly corrected by the court by reference to the legal effect of the contents of the books in evidence.

ID.—RESCISSION OF SUBSCRIPTION TO STOCK—CIRCUMSTANTIAL EVIDENCE—BURDEN OF PROOF.—The cancellation or rescission of a subscription for corporate stock may be proved by circumstantial evidence; but, where such rescission is a necessary part of the plaintiff's case, the burden devolves upon plaintiff to prove such rescission, and, where the plaintiff fails to sustain such burden, a finding of the court against the rescission will not be disturbed.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco and from an order denying a new trial.

The facts are stated in the opinion.

*John H. Dickinson,* for Appellant.

The consent of the stockholders to a rescission of subscription to stock need not be express. (Cook on Stock and Stockholders, sec. 169; *Gelpcke* v. *Blake,* 19 Iowa, 263; *Stuart* v. *Valley R. R. Co.,* 32 Gratt. 168; *Cook* v. *Chittenden,* 25 Fed. Rep. 544; *Evans* v. *Smallcombe,* L. R. 3 Eng. & Ir. App. Cas. 249.)

*Estee & Miller,* for Respondent.

The burden was upon plaintiff to prove the amount of stock outstanding and assessable at the date of assessment, and to show that the assessment did not exceed ten per cent of the capital stock. (Civ. Code, sec. 332.) Certificates of stock are only proof of property which may exist without them. (*Mitchell* v. *Beckman,* 64 Cal. 121; *California etc. Hotel Co.* v. *Callender,* 94 Cal. 127;

28 Am. St. Rep. 99; *Monterey etc. R. R. Co.* v. *Hildreth*, 53 Cal. 123; *Chater* v. *San Francisco Sugar Ref. Co.*, 19 Cal. 219.)   The court properly found against the unsustained allegations of the complaint.   (Hayne on New Trial and Appeal, sec. 240; *Speegle* v. *Leese*, 51 Cal. 415.)

VANCLIEF, C.—The plaintiff is a private corporation, organized in this state for commercial and manufacturing purposes, whose principal place of business "is San Francisco, California," and brought this action to recover from the defendant an assessment of five dollars per share on his stock (100 shares) in the corporation.

The judgment of the court was in favor of the defendant, and the plaintiff appeals therefrom, and from an order denying his motion for a new trial.

It is alleged in the complaint, among other things:

"That on the 11th day of May, 1891, said corporation, plaintiff herein, in accordance with the laws of the state of California, levied an assessment upon the capital stock of said corporation, for the purpose of paying the indebtedness of said corporation, being assessment No. six (6), of five dollars ($5) upon each and every of the shares of the capital stock of said corporation.

"That said assessment, so as aforesaid levied, did not exceed ten per cent of the amount of the capital stock named in the articles of incorporation."

The answer of the defendant specifically denies each of these allegations.

The court found that the whole capital stock named in the articles of incorporation is $250,000, divided into 10,000 shares of the par value of $25 per share, and that all said shares were subscribed at the time of the organization of the corporation as follows:

By N. K. Masten, 1,000 shares................$ 25,000
By W. C. Blackwood, 1,000 shares........  25,000
By W. W. Cozzens, 1,000 shares.........  25,000
By Clifford Saville, 1,000 shares .........  25,000
By A. W. Bryant, 1,000 shares...........  25,000
By W. K. Masten, 5,000 shares ..........  125,000

(This subscription is certified in the articles of incorporation, acknowledged on June 13, 1883, and is not disputed.)

The court further found that a part of said stock, not exceeding 1,705 shares, had been sold for assessments and purchased by the corporation prior to the levy of the assessment in question, leaving outstanding and subject to assessment, on May 11, 1891, not less than 8,295 shares. And further found that the total indebtedness of the corporation on May 11, 1891, did not exceed $15,000; that said assessment exceeded ten per cent of the whole capital stock named in the articles of incorporation, and greatly exceeded the indebtedness of the incorporation. And further found, as a conclusion from the foregoing facts, "that said pretended assessment was not levied in accordance with the laws of the state of California," and therefore was void.

The appellant contends that the finding that the number of shares of stock liable to assessment on May 11, 1891, was not less than 8,295 is not justified by the evidence.

If this finding is justified by the evidence the judgment and order should be affirmed, since an assessment of five dollars per share on 8,295 shares amounts to $41,475, which exceeds ten per cent of the whole capital stock named in the articles of incorporation by $16,475, contrary to section 332 of the Civil Code, which provides: "No one assessment must exceed ten per cent of the amount of the capital stock named in the articles of incorporation, except in the cases in this section otherwise provided for, as follows: 1. If the whole capital of a corporation has not been paid up, and the corporation is unable to meet its liabilities, or to satisfy the claims of its creditors, the assessment may be for the full amount unpaid upon the capital stock; or, if a less amount is sufficient, then it may be for such a percentage as will raise that amount."

The second and third exceptions apply only to railroad and insurance corporations, and the first cannot be

applied to the plaintiff .corporation, for the reason that there is no evidence tending to prove that its subscribed capital stock had not been fully paid. Under the pleadings the burden of proving a valid assessment was on the plaintiff. Besides, appellant claims nothing under any of these exceptions, except as a deduction from à misconstruction of the opinion of the court; his principal contention being that the subscription of W. K. Masten for 5,000 shares had been rescinded or canceled, and that 1,610 of the other 5,000 shares subscribed had been bought in by the corporation for delinquent assessments long before the levying of the assessment in question; so that only 3,390 of the shares originally subscribed remained outstanding and assessable at the date of the assessment in question, which it is claimed was levied upon only 3,390 shares.

By conceding the purchase of 1,610 shares by the corporation, as claimed by appellant, the controversy under this head is reduced to the question whether or not the evidence, without substantial conflict, is sufficient to prove the alleged rescission of W. K. Masten's subscription for 5,000 shares. If not, the assessment greatly exceeded ten per cent on the capital stock named in the articles of incorporation, and for this reason alone the judgment and order should be affirmed.

The only evidence offered for the purpose of proving the rescission or cancellation of W. K. Masten's subscription consisted of the "certificate-book" and the "minute-book." The first contained printed blank forms of certificates of stock attached to stubs from which the certificates, when filled up and issued, were detached, leaving the stubs showing the number and date of each certificate issued, the number of shares for which it was issued, and the name of the person to whom issued. The only matter found in this certificate-book relating to the stock of W. K. Masten is set forth in the statement on motion for new trial, as follows: "Certificate No. 6, for 5,000 shares, dated August 4, 1883, by capital stock, in favor of N. K. Masten, Tr.,

is marked across the stub 'not issued,' and across the face of the certificate 'canceled,' the name of the president being obliterated."

No doubt the initial " N " in the name is a clerical error, whether it occurred in the original entry in the certificate-book or in transcribing; otherwise the entry in the book does not relate to W. K. Masten's stock at all. N. K. Masten subscribed for only 1,000 shares, and not as " trustee."

It will hardly be contended that the mere act of canceling an unissued certificate of stock effected a cancellation of the subscription for such stock. It surely tends to prove nothing more than that, for some reason satisfactory to the person or persons who canceled the certificate, it was thought unnecessary or improper to issue that certificate at that time, for it does not appear who filled the blanks, who wrote the word "canceled," at what time, nor for what reason or purpose, nor is there any explanation of the matter in the evidence. There may have been various good reasons for canceling that particular certificate without any intention to cancel Masten's subscription. Conceding, however, that the certificate was canceled by order of the board of directors, with intent thereby to cancel Masten's subscription, yet the intended effect could not have followed without the unanimous consent of all the stockholders, of which there is no evidence. Indeed, there is no evidence that W. K. Masten, or any other stockholder, ever consented to a cancellation of his subscription. That a subscription for capital stock of a corporation cannot be rescinded or canceled, except for fraud or mistake, without the unanimous consent of all the stockholders, is too firmly settled to admit of controversy (Cook on Stock and Stockholders, 3d ed., secs. 166–69, and notes); and it is quite as well settled that the issuance of a certificate of corporate stock is not a necessary preliminary to the ownership or assessability of such stock. (*Mitchell* v. *Beckman,* 64 Cal. 121; *Cali-*

*fornia etc. Hotel Co.* v. *Callender*, 94 Cal. 127; 28 Am.
St. Rep. 99.)

W. H. Robinson, the only witness produced by the
plaintiff, testified that he first became secretary of the
plaintiff corporation in April, 1888 (about five years
after its organization), and was secretary on May 11,
1891, when the assessment in question was levied; that
the only means he had by which to estimate or deter-
mine the amount of assessable stock was the certificate
book above described, which was the only book kept by
the corporation containing any of the requisite contents
of the "stock and transfer book" required by section
378 of the Civil Code; yet that he could and did cor-
rectly estimate the amount of the outstanding assessable
stock on May 11, 1891, from the contents of the certifi-
cate-book; and that he found the amount of such stock
on May 11, 1891, to have been only 3,390 shares. That
this was a gross error was made manifest to the court
by the book itself, which was in evidence, and which
contained no account of stock for which no certificate
had been issued. The error in the estimate by the
witness must have resulted from his assumption either
that subscribed stock was not assessable until after a
certificate therefor had been issued, or that the sub-
scription for 5,000 shares by W. K. Masten had been
canceled by the cancellation of the unissued certificate
therefor as above shown. In either case his error was
an error in law, which the court properly corrected, since
he expressly based his estimate upon the book alone.

Counsel for appellant contends that the "minute-
book" contains circumstantial evidence of the cancel-
lation of W. K. Masten's subscription. But W. K. Mas-
ten's stock is not mentioned in the minutes of any
meeting of the stockholders or directors. It is claimed,
however, that some of the resolutions of the board of
directors were illegal, unless W. K. Masten's subscrip-
tion for 5,000 shares had been canceled. For example,
the first two assessments were levied upon "five thou-
sand shares of subscribed stock," when there must have

been much more than that number of subscribed shares if Masten's subscription had not been canceled. But I think it quite apparent from the minutes that this and all other apparently illegal acts of the board of directors are to be accounted for on the ground that the directors understood that no stock was assessable for which a certificate had not been issued. But however this may be, no act of the board of directors, legal or illegal, could have had the effect to cancel W. K. Masten's subscription.

The only thing found in the minutes of the stockholders' meetings said to have any bearing on the question is that it is recited that so many shares of stock were represented "out of five thousand *issued*," when not enough stock was represented to constitute a lawful meeting, unless W. K. Masten's stock, or a large amount of other stock, had been canceled. This, too, is explainable on the ground that it was probably understood that stock not "*issued*" need not be represented. These recitals would have been more nearly in point for appellant if they had stated that so many shares out of 5,000 *subscribed* were represented.

While it is true, as contended by counsel for appellant, that the cancellation or rescission of a subscription for corporate stock may be proved by circumstantial evidence, it seems unaccountable that not a stockholder or director was called as a witness to prove that any stockholder ever understood that W. K. Masten's subscription had been canceled. The only witness called by plaintiff was the last secretary, who was appointed in 1888, five years after the organization of the corporation, and who knew nothing of the transactions in question except what he learned from the books. Why was no former secretary called?

The plaintiff proved by the articles of incorporation that W. K. Masten was an original subscriber for 5,000 shares, and as to that there is no dispute. It then devolved upon it to prove that Masten's subscription had been rescinded, and I think the court properly

found that it failed to sustain the burden; and therefore the order and judgment should be affirmed.

SEARLS, C., and BELCHER, C., concurred.

For the reasons given in the foregoing opinion the order and judgment are affirmed.

McFARLAND, J., TEMPLE, J., HENSHAW, J.