[Civ. No. 764. Second Appellate District.—March 10, 1910.]

## HUGHES MANUFACTURING & LUMBER COMPANY, a Corporation, Appellant, v. FRED E. WILCOX, Respondent.

CORPORATIONS—STATUTORY LIABILITY OF STOCKHOLDER.—The statutory liability of a stockholder of a corporation is not based merely upon his proportion of the issued stock of the corporation, but rests upon the proportion which the whole number of shares of stock subscribed and paid for by him, whether issued or not, bears to the whole number of shares of stock subscribed and paid for by other stockholders, whether issued or not at the time when the debt sued upon was created.

ID.—SUBSCRIPTION AND PAYMENT FOR UNISSUED STOCK—BONUS—EXECUTED AGREEMENT—OWNERSHIP OF STOCK.—Where the directors of the corporation authorized the whole of the unissued stock to be subscribed and paid for by the stockholders, and agreed to a bonus of bonds, for which notes were afterward substituted by an executed agreement, and the whole of the stock was thus subscribed and paid for, and the subscription was deposited with the secretary for which the notes of the corporation were received, and the whole transaction was ratified by the directors, the subscribers became owners of the stock so subscribed and paid for, by such executed agreement.

ID.—MODE OF BECOMING STOCKHOLDER—INFORMAL CONTRACT—BONDS WAIVED.—No formal contract is required to constitute one a stockholder in a corporation. Any agreement by which a person shows his intention to become a stockholder is sufficient. In this case, if the original agreement be disregarded, payment for the stock and the voluntary acceptance of the bonds agreed upon in the form of notes executed and delivered by the corporation was clearly sufficient to constitute the defendant and his associates owners of the shares of stock to the extent of their respective subscriptions. The original condition for issuance of bonds was waived by the voluntary acceptance of the notes in lieu thereof.

ID.—ABSENCE OF ENTRY OF SUBSCRIBED SHARES UPON BOOKS—OWNERSHIP NOT AFFECTED.—The absence of the entry of the subscribed shares of stock formally upon the books of the corporation does not affect the ownership of the paid-up shares.

ID.—STATUTORY LIABILITY NOT CONFINED TO ISSUED SHARES.—The statutory liability of the stockholders of a corporation does not depend upon the shares of stock being formally recorded in the name of the owners. Such a position is contrary to section 3 of article XII of the state constitution, and to section 322 of the Civil

Code, neither of which limits the liability of stockholders to those who appear on the books of the corporation to be such but include every equitable owner of stock.

ID.—FAILURE OF CORPORATION TO PERFORM DUTY TO ISSUE SHARES—ABSENCE OF DUTY OF OWNER.—The failure of the corporation to perform its duty to issue the shares paid for cannot be imputed to the owner of the stock, who has the right to assume that the proper book entries are made. No duty devolves upon the purchaser of stock from the corporation to see that not only his name, but the names of all other purchasers, together with the number of shares owned by them respectively, are entered in the books of the corporation.

ID.—ABSENCE OF ESTOPPEL—LIABILITY UNAFFECTED.—In the absence of facts constituting an estoppel, the liability of a stockholder is unaffected by the neglect of duty of the corporation to enter his name upon its books.

ID.—CONSTRUCTION OF STATUTE — "STOCKHOLDER" OR "OWNER."—The term "stockholder" or "owner," as used in the statute, is not confined to one who appears upon the books of the corporation as such, but to the real owner, notwithstanding the fact that the stock as shown on the books appears in the name of another. The apparent book owner may be also required to respond to a creditor, but his liability is based not upon ownership, but upon estoppel to deny ownership.

ID.—RIGHT OF OWNER TO PROTECT HIMSELF FROM LIABILITY.—It being true that the creditor of a corporation may pursue the real owner of stock upon his statutory liability, the converse must also be true, that the real owner has the right to protect himself from statutory liability by showing the real ownership of shares of stock not appearing upon the books of the corporation in addition to those so appearing as a true basis upon which to diminish his liability.

ID.—ISSUANCE OF SHARES IMMATERIAL.—Issuance of certificates of stock for stock subscribed and paid for is not necessary to constitute one a stockholder or owner of shares in a corporation.

ID.—FAILURE OF MINUTES OF CORPORATION TO SHOW ACTION OF BOARD —PAROL EVIDENCE.—It is immaterial that the minutes of the corporation failed to disclose the action of the board. At most, the minutes of the proceedings of the board are *prima facie* evidence only of its acts. In the absence of a minute entry of its proceedings, they may be proved by parol evidence.

ID.—AGREED STATEMENT OF FACTS.—It is sufficient that the agreed statement of facts upon which the case was submitted shows that the total amount of the capital stock of the corporation was subscribed and paid for, when the indebtedness sued upon was contracted, and that defendant owned 135 shares out of the $100,000, instead of 105/530 of issued stock only as claimed by appellant.

APPEAL from a judgment of the Superior Court of Los Angeles County.   George H. Hutton, Judge.

The facts are stated in the opinion of the court.

W. G. Van Pelt, and Gray, Barker, Bowen, Allen, Van Dyke & Jutten, for Appellant.

W. S. Wright, for Respondent.

SHAW, J.—This is an action to enforce defendant's statutory liability as a stockholder of the Brand Manufacturing Company, a corporation, for the value of certain lumber and building materials sold and delivered to said corporation by plaintiff.

The only point in controversy is the extent of defendant's liability.   Plaintiff contends that at the time of the transaction had with the Brand Manufacturing Company only 530 shares of its authorized capital stock of $100,000 had been issued or sold, of which number defendant was the owner of 105 shares of the par value of $100 each, thus fixing the defendant's statutory liability at 105/530 of the amount due plaintiff from the corporation.   On the other hand, defendant contends that at the time the corporation became indebted to plaintiff the outstanding and subscribed capital stock consisted of 1,000 shares of the par value of $100 each, of which he owned 135 shares, thus making the amount for which he was liable 135/1000 of such indebtedness, instead of 105/530, as contended for by plaintiff.

The court rendered judgment in accordance with the contention of defendant, from which plaintiff appeals.

The case was tried upon an agreed statement of facts, from which it appears the authorized capital of the corporation was $100,000, divided into 1,000 shares of the par value of $100 each, and that at the time the indebtedness was created, to wit, January 1, 1907, the journal, ledger and stock-book of the corporation showed that certificates for 530 shares of such stock, and no more, had been issued, and that defendant, as shown by said books, was the owner and holder of 105 shares thereof, and no more; that the minute-book of the Brand Manufacturing Company disclosed that during the summer

of 1906 the board of directors discussed plans for disposing of the unissued stock of the corporation, and at a meeting of the board held on August 29, 1906, decided that all the treasury stock should be sold, and offered the same for sale to its stockholders. On December 5, 1906, at a meeting of the board of directors, it was proposed to create a bonded indebtedness of $50,000, out of which there should be issued to the subscribers for the 470 shares of the unissued stock of the corporation bonds in an amount equal to the par value of the stock for which they subscribed; that thereupon, on December 8, 1906, defendant and others agreed among themselves in writing to take the entire amount of unissued treasury stock of 470 shares upon the terms and conditions of said proposal, each subscribing for the number of shares set opposite his respective name, defendant subscribing for thirty shares of the stock.

This agreement was delivered to the secretary of the company, and at a meeting held on December 8th, the board of directors agreed that the subscribers, on paying the money under their subscriptions, should receive interim notes from the company to hold until the bonds could be finally printed and delivered, but no minute entry of this agreement appears in the minute-book. Defendant subscribed for thirty shares of the stock, and he and the other signers of the agreement in due course paid the amount of their respective subscriptions covering the entire 470 shares of stock, and part of them, including defendant, received the interim notes referred to covering the amount of their respective subscriptions, but no certificates of stock were ever issued. On May 14, 1907, at a meeting of the board of directors, it was resolved that the company go into liquidation, and at a subsequent meeting of the stockholders of the company, held on May 24, 1907, at which all of the subscribers of the 470 shares of stock, together with two-thirds of the old stockholders, were present, it was resolved by said stockholders that, instead of issuing the bonds authorized by the board of directors at the meeting held on December 5, 1906, the president and secretary be authorized and directed to issue the company's notes payable on demand to such stockholders as had not already received notes to cover cash advanced by them to the company upon subscriptions for stock for which

they had expected the company's bonds; the said notes to be dated as of even date with the dates on which such subscribers had paid in the amounts of their subscriptions to the stock of said company, which notes were issued and delivered in accordance with such resolution; and it was further unanimously resolved that said meeting ratify and confirm all the acts of the board of directors done subsequent to the last stockholders' meeting. Subsequently, the company was by its creditors thrown into bankruptcy, which proceedings are still pending.

Appellant contends that the corporation was not a party to the agreement signed by defendant and others, who "agreed together to join in taking up the treasury stock of the corporation," upon the understanding that they should have a bonus in seven per cent bonds of the corporation. Delivery to the secretary of the company of the agreement whereby the subscribers agreed to take the 470 shares of stock constituted an acceptance of the proposal made by the board of directors. The substitution of notes of the corporation, which the subscribers accepted in lieu of bonds, was to such extent a modification of the agreement by consent. As thus modified, the contract was fully executed. No formal contract is required to constitute one a stockholder in a corporation. "Any agreement by which a person shows an intention to become a stockholder is sufficient." (Cook on Corporations, sec. 52.) In this case, disregarding the agreement, payment for the stock and voluntary acceptance of the bonus agreed upon in the form of notes executed and delivered by the corporation was clearly sufficient, in the absence of other objection, to constitute defendant and his associates owners of the shares of stock to the extent of their respective subscriptions. Conceding the subscription to have been conditional upon the issuance of the bonds, as claimed by appellant, and that without complying with the condition the corporation could not have enforced the contract, nevertheless, this condition was waived by the voluntary acceptance of the notes in lieu of the proposed bonds.

No entry appears in the books of the corporation showing defendant to be the holder of these thirty shares of stock for which he had subscribed and paid the purchase price thereof. Appellant contends that by reason of this fact de-

fendant cannot as regards these shares be deemed a stockholder in the company; in other words, that we must indulge in the conclusive presumption that the corporation complied with the provisions of section 14 of article XII of the constitution, which requires that books be kept by the corporation wherein "shall be recorded the amount of capital stock subscribed and by whom," together with "the names of the owners of its capital stock and the amount owned by them respectively"; and that the statutory liability of a stockholder must be based upon the ownership and amount of capital stock subscribed as appears from the entries in the books. We find no authority in support of this position. It is contrary to section 3, article XII, of the constitution, and in direct conflict with the provisions of section 322 of the Civil Code, which provides: "Each stockholder of a corporation is individually and personally liable for such proportion of all its debts and liabilities contracted or incurred during the time he was a stockholder as the amount of stock or shares owned by him bears to the whole of the subscribed capital stock or shares of the corporation. . . . The term 'stockholder,' as used in this section, applies not only to such persons as appear by the books of the corporation to be such, but also to every equitable owner of stock, although the same appears on the books in the name of another." Neither section 3 of article XII, nor said section 322, limits the ownership of shares of stock to one whose name appears upon the books of the corporation as the owner thereof. The constitution, section 14, article XII, imposes upon a corporation the duty of entering in books kept for that purpose the amount of its subscribed capital stock, by whom subscribed, the names of the owners of its stock and number of shares owned by them respectively. Failure to perform such duty by the corporation, however, cannot be imputed to the owner of the stock, who has a right to assume that the proper book entries are made. No duty devolves upon the purchaser of stock to see that not only his name, but the names of all other purchasers, together with the number of shares owned by them, respectively, are entered in the corporate books. Hence, in the absence of facts constituting an estoppel—and none appears here—his liability is unaffected by such neglect of duty on the part of the corporation. The term "stockholder" or "owner," as used in the

statute, is not confined to one who appears upon the books of the corporation as such, but to the real owner, notwithstanding the fact that the stock as shown by the books appears in the name of another. While the latter, though not the owner, may be required to respond to a creditor of the corporation, such liability is based, not upon ownership, but upon grounds of estoppel to deny ownership. (*O'Connor* v. *Witherby,* 111 Cal. 523, [44 Pac. 227]; *Baines* v. *Babcock,* 95 Cal. 581, [29 Am. St. Rep. 158, 27 Pac. 674, 30 Pac. 776]; *Abbott* v. *Jack,* 136 Cal. 510, [69 Pac. 257]; *Hurlburt* v. *Arthur,* 140 Cal. 103, [98 Am. St. Rep. 17, 73 Pac. 734].) To hold that a creditor of a corporation cannot recover from an owner of stock upon a statutory liability because the corporation has neglected to make the proper book entries of his holdings, showing him to be a stockholder, would nullify the provisions of both the constitution and statute. This being true, then, in the absence of acts constituting an estoppel, the converse of the rule must likewise be true, namely, that where the corporate books fail to disclose an increased subscription of stock, by reason of which increase (whether his own subscription or that of another, or both) the stockholder's liability, as in the case at bar, is less than it would otherwise be, he is entitled to establish such fact and insist upon his statutory liability being fixed upon such basis.

Appellant has cited a number of cases in support of its contention. An examination of these cases will disclose the fact that the creditor was pursuing one whose name appeared upon the books of the corporation as a stockholder, but who denied liability upon the ground that he was not the owner of the stock, and where recovery was had it was based upon grounds of estoppel. (See cases above cited.) And where recovery was denied against one who was not in fact the owner, but appeared upon the books to be a stockholder, it was due to a finding that he was not guilty of acts, either of omission or commission, which would, as against the creditor of the corporation, estop him from denying ownership. (*Welch* v. *Gillelen,* 147 Cal. 571, [82 Pac. 248]; *Shattuck etc. Co.* v. *Gillelen,* 154 Cal. 779, [99 Pac. 348].)

The fact that no stock was issued to defendant and the other subscribers is immaterial. Issuance of the certificates of stock is not necessary to constitute one a stockholder or

owner of shares in a corporation. (*Garretson* v. *Crude Oil Co.,* 146 Cal. 188, [78 Pac. 838]; *California S. Hotel Co.* v. *Callender,* 94 Cal. 120, [28 Am. St. Rep. 99, 29 Pac. 859]; *Pacific Fruit Co.* v. *Coon,* 107 Cal. 447, 452, [40 Pac. 542].) It is likewise immaterial that the minutes failed to disclose the action of the board taken in regard to certain matters. At most, the minutes of the proceedings of the board of directors are *prima facie* evidence only of its acts. In the absence of minute entry of its proceedings, they may be proved by parol evidence. The agreed statement of facts upon which the case was submitted shows the amount of the subscribed capital stock of the corporation to have been $100,000, divided into 1,000 shares of the par value of $100 each, of which defendant was the owner of 135 shares.

The judgment is affirmed.

Allen, P. J., and Taggart, J., concurred.

A petition for a rehearing of this cause was denied by the district court of appeal on April 9, 1910, and a petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on May 9, 1910.