[Civ. No. 3406. Second Appellate District, Division Two.—January 27, 1922.]

FIRST NATIONAL BANK OF PORTERVILLE (a Corporation), Respondent, v. EDWARD DE MOULIN, Defendant; ANNA J. DE MOULIN, Appellant.

[1] Stockholder's Liability—Pleading—Ownership of Stock.—In an action to recover upon a stockholder's statutory liability, it is sufficient to allege that the defendant was the owner of a designated number of shares at the time the corporation indebtedness was contracted, and it is not necessary to allege that the defendant appears by the books of the corporation to be a stockholder.

[2] Id.—Ownership of Stock at Time of Contracting of Indebtedness—Sufficiency of Evidence.—In this action to recover upon a stockholder's liability, the evidence was sufficient to justify the finding that the defendant at all times while the indebtedness was being contracted by the corporation was the owner and holder of a certain number of shares which she claimed to have transferred to a third party before any part of the indebtedness was contracted.

[3] Id.—Evidence—Impeachment of Corporation President.—Where the president of the corporation of which the defendant was a stockholder testified in an action upon such stockholder's liability that he had made in the books of the corporation an entry showing a transfer of stock by the defendant to a third person on a given date, a letter written by such official to the plaintiff subsequent to such date giving the names of the stockholders of the corporation which included the defendant as the owner of the alleged transferred shares was admissible for the sole purpose of impeaching such officer, notwithstanding the fact that plaintiff had made him its own witness.

---

1. Stockholder's liability, note, 3 Am. St. Rep. 806.

[4] EVIDENCE—IMPEACHMENT OF OWN WITNESS.—Evidence of a prior contradictory statement by a party's own witness is admissible, not to establish the truth of the statement, but to discredit the witness, if the latter, not simply failing to give favorable testimony for the party producing him, has given testimony that is positively injurious to the cause of the party by whom he is called.

[5] STOCKHOLDER'S LIABILITY — EVIDENCE — OWNERSHIP OF STOCK BY WIFE—TESTIMONY OF HUSBAND.—Where the president of the corporation of which the defendant was a stockholder testified in an action upon such stockholder's liability that he had made an ·entry in the books of the corporation showing a transfer of the stock by the defendant on a certain date to a third person, the introduction of a letter written by such officer subsequent to such date to the plaintiff giving a list of stockholders and showing the defendant to be the owner of the alleged transferred stock did not contravene subdivision 1 of section 1881 of the Code of Civil Procedure by reason of the fact that the defendant was the wife of such officer, since it was a communication by the husband to a third person, and in view of the fact that the wife was present in court and made no objection to the foundation testimony.

[6] EVIDENCE—HUSBAND AND WIFE—COMPETENCY OF TESTIMONY.— Save as to privileged communications passing between the spouses, the inhibition of section 1881 of the Code of ·Civil Procedure affects the competency of a husband or wife as a witness, not the competency of the testimony that he or she may give, and by making a husband or wife incompetent as a witness against the other, the code does not render inadmissible an extrajudicial statement that either may have made to a third party, if such statement be otherwise admissible.

[7] STOCKHOLDER'S LIABILITY — LEAVE TO AMEND COMPLAINT — CONFORMITY TO PROOF — NUMBER OF SHARES — FAILURE TO AMEND — INSUFFICIENT GROUND FOR REVERSAL.—Where in an action to recover upon a stockholder's liability the plaintiff was given permission at the conclusion of the trial to amend its complaint by interlineation to conform to the proof as to the number of shares owned by the defendant, but failed to do so, the judgment will not be reversed by reason of the failure to make such amendment, where the fact was found in accordance with the evidence and in conformity with the amendment.

---

· 4.  Impeachment of witnesses by prior inconsistent statements, note, 73 Am. Dec. 762.

Prior inconsistent statement of witness as evidence of facts asserted, note, 21 Ann. Cas. 1238.

[8] Appeal — Findings — Insufficiency of Evidence — Absence of
Specifications—Effect of.—The appellate court will not consider
the contention that certain designated portions of the findings
are not sustained by the evidence, where no attempt is made to
point out wherein the evidence is insufficient or any reference
made to the transcript for that purpose.

APPEAL from a judgment of the Superior Court of
Los Angeles County. L. H. Valentine, Judge. Affirmed.

The facts are stated in the opinion of the court.

William H. Fuller and Chas. W. Hackler for Appellant.

Kemp, Mitchell & Silberberg and Guy Knupp for Respondent.

FINLAYSON, P. J.—This is an action to recover from
defendants upon their stockholder's statutory liability for
an indebtedness contracted by the Magnesite Refractories
Company, a corporation. The complaint alleges that at the
times therein mentioned all of the corporation's capital stock,
2,000 shares, had been subscribed; that at all the times men-
tioned, the defendants, who, it seems, are husband and wife,
"were the subscribers of and the owners of" the numbers
of shares set opposite their respective names. The number
of shares set opposite the name of the defendant Edward
De Moulin is 724, and 1,065 shares is the number set opposite
the name of the defendant and appellant, Anna J. De
Moulin. The court found all the allegations of the complaint
to be true, except that the defendant Edward is the owner
and holder of but ten shares and the defendant Anna is the
owner of 1,089 shares, which is 24 shares more than
the number alleged in the complaint. Judgment for plain-
tiff was entered accordingly, and the defendant Anna J. De
Moulin appeals.

[1] Appellant objects to the sufficiency of the complaint
because it does not allege that she "appears by the books"
of the corporation to be a stockholder. As we have stated,
the complaint alleges that, at the time when the indebtedness
was contracted by the corporation, appellant and her husband
"were the subscribers of and the *owners* of" the number of
shares set opposite their respective names. Appellant's con-

tention is based upon the definition of a stockholder as given
in section 322 of the Civil Code. That code section, after
providing that each stockholder of a corporation is individ-
ually and personally liable for his proportion of all the debts
and liabilities contracted or incurred by the corporation dur-
ing the time he was a stockholder, declares: "The term stock-
holder, as used in this section, applies not only to such per-
sons as appear by the books of the corporation to be such,
but also to every equitable owner of stock, although the same
appears on the books in the name of another." From this it
is argued that the statutory liability exists only against one
who "appears by the books of the corporation" to be a stock-
holder, or who is the "equitable" owner of stock. The con-
tention is devoid of even the semblance of merit. In this
code definition of the word "stockholder," the legislature
intended to *enlarge,* not to limit, the meaning of the term.
(*Western Pac. Ry. Co. v. Godfrey,* 166 Cal. 351 [Ann. Cas.
1915B, 825, 136 Pac. 284].) In its definition of what is
generally referred to as the statutory liability of stockhold-
ers, our constitution declares: "Each *stockholder* of a cor-
poration, or joint-stock association, shall be individually and
personally liable for such proportion of all its debts and lia-
bilities contracted or incurred, during the time he was a
stockholder, as the amount of stock or shares owned by him
bears to the whole of the subscribed capital stock, or shares
of the corporation or association." (Sec. 3, art. XII.)
(Italics ours.) At the time of the adoption of this constitu-
tional provision the Civil Code defined "stockholders" to be
the "*owners* of shares in a corporation which has a capital
stock." (Civ. Code, sec. 298.) In view of this contempo-
raneous definition of the word "stockholder," it must be held
that the liability which is fastened upon each "stockholder"
by the organic law of the state attaches to every "owner"
of stock. (*Shean v. Cook,* 180 Cal. 95 [5 A. L. R. 1042,
179 Pac. 185].) That it is sufficient to allege that the defend-
ant was "the owner" of a designated number of shares at
the time when the indebtedness was contracted by the corpo-
ration is no longer an open question in this state. In *Duke*
v. *Huntington,* 130 Cal. 274 [62 Pac. 511], the court said:
"Section 322 of the Civil Code makes the appellant liable
for his proportionate amount of the indebtedness of the cor-
poration, not only for the stock standing in his name upon

its books, but also for all the stock of which he is the owner standing upon the books in the name of another.'' And in *Hughes Mfg. Co.* v. *Wilcox,* 13 Cal. App. 27, 28 [108 Pac. 871, 873], the court says: ''The term 'stockholder' or 'owner,' as used in the statute, is not confined to one who appears upon the books of the corporation as such, but to the *real* owner, notwithstanding the fact that the stock as shown by the books appears in the name of another.'' (Italics ours.)

The complaint alleges, in substance and effect, and the trial court finds that the Magnesite Refractories Company became indebted to plaintiff between July 1, 1917, and October 1, 1917. The evidence discloses that all of this indebtedness was contracted subsequently to the ninth day of July, 1917, but prior to the first day of October of that year. The lower court also found that at all times between the 1st of July, 1917, and the 1st of October following appellant was the owner and holder of 1,089 shares of the capital stock of the Magnesite Refractories Company. Appellant claims that the evidence is insufficient to support the finding that she was the owner of that number of shares between those dates. On April 6, 1917, certificate No. 14 for 24 shares was issued to her. It is conceded that she has owned this block of 24 shares at all times since their issuance; but it is claimed that the evidence is insufficient to justify a finding that she has owned the balance of the 1,089 shares, viz., 1,065 shares at any time since July 9, 1917, her claim being that on that date she transferred the 1,065 shares to one Charles Oliver Potthast, and that the name of her alleged transferee has ever since then appeared on the books of the corporation as the owner of the stock. It seems that on June 27, 1917, certificate No. 22 for 1,065 shares was issued to appellant, which fact duly appears from the only book in which the corporation kept a record of its stock transfers—a book which on its cover bears the title, ''Combined Ledger and Journal.'' Appellant concedes that she owned the 1,065 shares from June 27, 1917, the date of their issuance to her, until July 9, 1917; but, as we have stated, her claim is that on the latter date she transferred the shares to Potthast.

[2] In order to prove its case by showing the issuance of the 1,065 shares to appellant, respondent was obliged to and did put in evidence the book in which the corporation

kept a record of its stock transactions—the ''Combined Ledger and Journal.'' That book not only contains an entry showing that certificate No. 22 for 1,065 shares had been issued to Mrs. De Moulin on June 27, 1917, but contains also an entry to the effect that, on July 9, 1917, certificate No. 22 was canceled and a new certificate issued to Potthast for the 1,065 shares—certificate No. 23. The entry showing this purported transfer and the issuance of the stock to Potthast is the last entry in the book. In order to identify the book as that in which the corporation kept the record of its stock, plaintiff made the defendant Edward De Moulin its witness. De Moulin testified that he has been connected with the Magnesite Refractories Company since the date of its incorporation (he was its president); that some of the entries in the book are in his handwriting, and that the remainder are in the handwriting of the secretary, one E. W. Skinner; that he, Edward De Moulin, wrote the last two entries, viz., the entry which shows the issuance of the 1,065 shares to his wife on June 27, 1917, evidenced by certificate No. 22, and the entry which purports to show the transfer of those shares to Potthast on July 9, 1917, and the issuance of certificate No. 23 therefor. It is the theory of respondent that the last entry in the book, the entry which purports to show the transfer of the 1,065 shares to Potthast, was a false entry made by De Moulin to conceal his wife's ownership of the stock during the period when the indebtedness was being contracted by the corporation. That is, it is respondent's theory that the entry in question was not made until some time after May 1, 1918, at the earliest, and that, as a matter of fact, Mrs. De Moulin appeared on the books of the corporation as the owner of the stock during all of the period that the indebtedness was being contracted by the corporation, namely, between July 27, 1917, and August 3, 1917. To maintain this theory in the court below, plaintiff put on the witness-stand W. W. Middlecoff, Esq., who had been the attorney for this plaintiff in two cases previously pending in the superior court for Tulare county. Mr. Middlecoff testified that the first of these cases was tried in May, 1918, and the second in December, 1918; that during the trial of one of those cases—he could not remember which—he had seen the book which the witness Edward De Moulin identified as the combined ledger and journal of the Magnesite Refrac-

tories Company; that at that time he, Middlecoff, prepared a statement, the items whereof were taken from the book which Edward De Moulin had identified as the book wherein the corporation kept a record of its stock; and that the statement which he thus took from the book correctly shows the names of the stockholders and the number of shares owned by each, as shown by the book at the time when he saw it and made up the statement therefrom. The last item on the statement so made by Mr. Middlecoff reads: "June 27. Anna J. De Moulin. 22. 1065." This is a copy of the entry showing the issuance of the stock to appellant on June 27, 1917. Mr. Middlecoff further testified that at the time when he saw the book—the book which the witness Edward De Moulin had identified as the only stock-book kept by the corporation—it did not contain the item that now appears as the last entry therein, viz., the entry reading: "July 9. Charles Oliver Potthast. 62. 23. 1065," i. e., the entry purporting to show a transfer of the stock from appellant to Potthast. Since this book was seen by Mr. Middlecoff either in May or December of 1918, it necessarily follows that, if his testimony be true—and as such it was accepted by the learned trial judge—the entry purporting to show the transfer of the stock from appellant to Potthast was not made until after May 1, 1918, at the earliest, which was about nine months after all of the indebtedness had been contracted by the corporation. For these reasons we are satisfied that the evidence is sufficient to justify the finding that at all times between July 1, 1917, and October 1, 1917, and while the indebtedness was being contracted by the corporation, appellant was "the owner and holder of 1,089 shares of the capital stock of said Magnesite Refractories Company"—that is, that she was, during all of that period, the owner of the 24 shares that were issued to her on April 6, 1917, and of the 1,065 shares that were issued to her on June 27, 1917.

[3] Some time prior to December 19, 1918, plaintiff's vice-president and general manager, H. C. Carr, asked Edward De Moulin, who, as we have stated, was the president of the Magnesite Refractories Company and is a defendant herein, to furnish a list of the stockholders of his corporation. In response to this request Mr. De Moulin, on December 19, 1918, wrote Carr a letter giving the desired informa-

tion. Plaintiff proved by De Moulin that the signature to the letter was his. In this letter De Moulin states that his wife, the appellant here, is the owner of 1,089 shares. While testifying as a witness for plaintiff De Moulin stated that the entry in the stock-book which purports to show a transfer of the 1,065 shares to Potthast on July 9, 1917, was made by him on the date that it bears—July 9, 1917. Thereupon plaintiff offered in evidence the letter which De Moulin had written to plaintiff's vice-president, Mr. Carr, and in which the former states that, at the date of his letter, December 19, 1918, his wife owned 1,089 shares. Defendant's counsel objected to the offer, saying: "I object to the introduction of the letter upon the ground that it is incompetent, not the best of evidence; it is inadmissible and privileged and prohibited by subsection 1 of section 1881 of the Code of Civil Procedure, which provides that the husband cannot be examined for or against the wife in any action without her consent." The objection was overruled, and the letter received in evidence.

Obviously, the letter was the best evidence of its own contents, and there is no force in the objection that the document was "not the best of evidence," unless by that expression counsel meant that the letter was not the "best evidence" of the fact that Mrs. De Moulin was the owner of 1,089 shares at the date when it was written. If that is what counsel meant by this particular ground of objection, then it must freely be conceded that the letter not only was not the "best" evidence of that fact, but that it was not any kind of admissible evidence whatever of appellant's ownership of the stock. The letter was not material as evidence of an admission by the defendant Edward De Moulin against his interest; for, as to his stockholdings, it contains nothing contrary to the conceded facts. And it was not admissible against appellant as evidence that she did in fact own 1,089 shares, or any number of shares, at the date when the letter was written; for, as to her, it would, if received to prove her ownership, be rank hearsay. But though not admissible to prove that Mrs. De Moulin did in fact own 1,089 shares, it was, we think, admissible for the purpose, and solely for the purpose, of impeaching the witness Edward De Moulin, the author of the letter, whose evidence that he

had made in the book of the corporation an entry showing a transfer of the stock to Potthast on July 9, 1917, was directly contradicted by his statement in the letter that Mrs. De Moulin owned the 1,089 shares on December 19, 1918. And we think the letter was admissible for the purpose of impeaching Mr. De Moulin, notwithstanding the fact that plaintiff had made him its own witness. [4] It is not true, as an absolute proposition of law, that parties may not impeach their own witnesses. Evidence of a prior contradictory statement by a party's own witness is admissible, not to establish the truth of the statement, but to discredit the witness, if the latter, not simply failing to give favorable testimony for the party producing him, has given *adverse* testimony—testimony that is positively injurious to the cause of the party by whom he is called. In this state we have a statutory declaration that such contradictory statements by a party's witness are admissible for the purpose of impeachment. (Code Civ. Proc., sec. 2049.) In the instant case there was not a mere failure on the part of the witness De Moulin to give testimony favorable to plaintiff. His testimony that he had made the entry in question on July 9, 1917, was adverse testimony and positively injurious to plaintiff's cause. Generally speaking, the element of surprise is a condition precedent to the introduction of such impeaching evidence. (*Zipperlen* v. *Southern Pac. Co.*, 7 Cal. App. 206, 216 [93 Pac. 1049].) We do not understand that respondent claims that it was surprised by De Moulin's testimony. But surprise is not always a necessary element. Such impeaching evidence may be given when the witness to be discredited was put on the stand to prove his own fraud. (30 Am. & Eng. Ency. of Law, 2d ed., 1128; *Luzzadder* v. *McCall* (Mo. App.), 198 S. W. 1144.) Also, what are called "instrumental witnesses," i. e., witnesses that a party is bound by law to produce, such as subscribing witnesses to a will, deed or other paper, may be impeached by showing that they had previously made contradictory statements. A party is not deemed to vouch for the credibility of a witness that the law requires him to produce. (30 Am. & Eng. Ency. of Law, 2d ed., 1132; *People* v. *Elco*, 131 Mich. 519 [91 N. W. 755, 94 N. W. 1069]; *State* v. *Slack*, 69 Vt. 486 [38 Atl. 311].) Here, if Middlecoff's testimony be true, and as such it evidently was considered by the trial court and

therefore must be so considered by us, a gross fraud was perpetrated by the president of the Magnesite Refractories Company, the witness Edward De Moulin. It was the theory of plaintiff that De Moulin had made a false and fraudulent entry for the purpose of enabling his wife to escape a just liability for her share of the corporation's indebtedness. Not only was it necessary to call De Moulin in order to identify the book which showed the issuance of the stock to Mrs. De Moulin (he had charge of the book, and the secretary, a traveling salesman, had not been heard of by the witness for six months or more), but, as to this alleged false entry, he was asked questions which, if answered in accordance with the plaintiff's theory of the case, would have shown him to have been guilty of grossly fraudulent conduct. We think that under these circumstances the letter was admissible in evidence, not for the purpose of establishing the truth of its statements, but that the trial court might view the witness' testimony at its real worth. And we may not assume that the learned trial judge considered the letter for any purpose other than impeachment.

[5] There is no merit in the claim that the introduction of the letter contravenes subdivision 1 of section 1881 of the Code of Civil Procedure. The letter was not a communication made by one spouse to the other. It was a communication made by the husband to a third person. The wife did not withhold her consent to the examination of her husband respecting the circumstances attending the writing of the letter and his signature thereto. Appellant was present in court, and every particle of testimony that was necessary to lay the foundation for the introduction of the letter was allowed to go in without objection to the competency of her husband to testify as a witness in the case. She, therefore, is presumed to have given her consent to his being made a witness to testify to all of those facts. The proper foundation for the introduction of the letter having thus been duly laid without objection to the competency of the husband to testify as a witness for plaintiff, and, therefore, with the wife's implied consent, the letter was admissible for the purpose of impeaching De Moulin. After the foundation had thus been laid without the interposition of objection to the competency of the witness, any objection to the introduction of the letter necessarily would be an ob-

jection addressed to the competency of *that document* as evidence in the case, and not to the competency of the husband as a *witness*. [6] Save as to privileged communications passing between the spouses, the inhibition of section 1881 affects the competency of a husband or wife as a *witness,* not the competency of the *testimony* that he or she may give. (*People* v. *Singh,* 182 Cal. 457, 483 [188 Pac. 987].) By making a husband or wife incompetent as a *witness* against the other, the code does not render inadmissible an extrajudicial statement that either may have made to a third party, if such statement be otherwise admissible. (*People* v. *Chadwick,* 4 Cal. App. 63, 72 [87 Pac. 384, 389].)

Appellant asserts that the trial court failed to find upon affirmative matters set up in her answer. No affirmative defense of new matter is pleaded. It is true that, commingled with her denials, certain affirmations appear in defendant's answer. For example, in her denial of plaintiff's allegation that she is the owner of 1,065 shares, appellant couples with the denial an averment that she owns but 24 shares. This affirmative averment is but an indirect denial that she owns 1,065 shares, or more than 24 shares. An objection based upon a failure to find specifically upon such an affirmation does not rise to the level of puerility. The answer also alleges that the defendants are husband and wife. But even so, since appellant's husband was made a party defendant it is of no moment that the court failed to find that he is her husband.

[7] The complaint alleges that appellant was the owner of 1,065 shares. The entries in the book in which the corporation kept a record of its stock, considered in connection with Mr. Middlecoff's testimony, show that appellant owned 1,089 shares. At the conclusion of the trial plaintiff was given permission to amend its complaint "by interlineation" to conform to the proof, by changing the figures from 1,065 to 1,089. Though the court found in conformity with the evidence, it does not appear from the record before us that plaintiff availed itself of the permission thus given to amend its complaint "by interlineation." But, leave having been given to amend and the court having found the fact in accordance with the evidence and in conformity with the amendment that would have been made had plaintiff availed itself of the permission granted, we think that we should

consider the case as though the amendment had in fact been made. (*Carpenter* v. *Sheldon,* 22 Ind. 259.) There is no necessity for subjecting the parties to a new trial on account of a failure to amend the complaint in this particular. The lower court may be directed to cause the amendment to be made as of a date prior to the judgment, if, in fact, the complaint has not already been amended in accordance with the permission granted to plaintiff. (*Alameda County* v. *Crocker,* 125 Cal. 101 [57 Pac. 766].)

[8] Finally, appellant makes the bald assertion that certain designated portions of the findings are not sustained by the evidence, without attempting to point out wherein the evidence is insufficient. She has not even made any reference to the transcript for that purpose. This being so, we will not examine points thus perfunctorily made. We cannot be expected to go through the record on an independent voyage of discovery. If counsel will not discuss their points, neither shall we. (*Kyle* v. *Craig,* 125 Cal. 107, 116 [57 Pac. 791]; *Brovelli* v. *Bianchi,* 136 Cal. 612 [69 Pac. 416]; *Tait* v. *McInnes,* 3 Cal. App. 155 [84 Pac. 674].)

The judgment is affirmed, and if the complaint has not already been amended by interlineation so as to allege that the defendant Anna J. De Moulin was the owner of 1,089 shares, the court below is directed to cause such amendment to be made as of a date prior to the judgment.

Works, J., and Craig, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on March 27, 1922.

All the Justices concurred.

Lennon, J., was absent and Richards, J., *pro tem.,* was acting.