[L. A. No. 12197. In Bank.—September 14, 1932.]

THE UNITED STATES NATIONAL BANK OF LOS ANGELES (a Corporation), Respondent, v. WILLIAM STILLER et al., Appellants.

E. A. Miller, Miller & Patterson, Louis L. Swarthe and Wolfson & Swarthe for Appellants.

Patterson, Bailey & Montgomery and Charles C. Montgomery for Respondent.

CURTIS, J.—The appellants were stockholders in the Pacific Cotton and Finance Corporation, a corporation organized under the laws of this state. This action was instituted against them upon their liability as stockholders in said company. Three causes of action were contained in

the complaint, but as no point is raised as to the correctness of the judgment based upon the third cause of action, it will be necessary for us to devote attention only to the first and second causes of action.

The first cause of action was based upon an indebtedness originally created by a loan of $22,625 by the plaintiff to the Pacific Cotton and Finance Corporation on July 8, 1925, evidenced by a promissory note of that date, executed by said corporation in said sum of $22,625. The second cause of action arose out of an indebtedness originally created by a loan of $15,000 by the plaintiff to said corporation on May 4, 1925, which was also evidenced by a promissory note bearing date May 4, 1925, executed by said corporation in said sum of $15,000. Each of said notes was in plaintiff's favor and bore interest.

The court found that on July 8, 1925, the date on which the note for $22,625 was executed, the total amount of the capital stock of said Pacific Cotton and Finance Corporation issued and outstanding was 6,305 shares, and that each of the three appellants on said date owned 1,051 shares, or one-sixth of the total capital stock of said corporation, and directed judgment to be entered against each of them for one-sixth of the total amount found due on said indebtedness. The court also found that on May 4, 1925, the date on which the note for $15,000 was executed, the total amount of the capital stock of Pacific Cotton and Finance Corporation issued and outstanding was 4,000 shares; that on said date appellant Stiller was the owner of one-third of said issued and outstanding capital stock and that appellant Kay was the owner of 100 shares of said capital stock, but that appellant Cohn was not a stockholder of said corporation on said date. Appellants claim that these findings with the exception of the one last mentioned to the effect that the appellant Kay was the owner of 100 shares and appellant Cohn was not a stockholder of said corporation on May 4, 1925, the date the note for $15,000 was executed, are not supported by the evidence. Appellants contend that on the respective dates when said indebtednesses were created, that is on May 4, 1925, and July 8, 1925, the appellants Stiller and Kay were each the owner of only 100 shares of the capital stock of said corporation, and that the total issued and outstanding stock therein was 4,000 shares, and that appel-

lant Cohn was not the owner of any of said stock on either of said dates.

We will first devote our attention to the transaction of May 4, 1925, when $15,000 was borrowed of the plaintiff by the Pacific Cotton and Finance Corporation, being the second cause of action set out in the complaint. At that time there were actually standing on the books of said corporation, 100 shares of its capital stock in the name of appellant Stiller and a like number of shares of stock in the name of appellant Kay. Stiller had been elected president and Kay secretary of the corporation. The corporation desired a loan of $15,000. Evidently Stiller and Kay had never done business with the plaintiff bank up to this time. They were introduced to the bank officials by Cohn. The loan was arranged, but before making it the bank required a financial statement of the Pacific Cotton and Finance Corporation and also a like statement from Stiller, the president. These statements were prepared and presented to the bank by Stiller, and upon the strength of them the loan of $15,000 was made by the bank to the corporation. The statement of the corporation showed as follows:

Capital stock paid in............................$60,300
    That is made up of the
        Outstanding stock ...................$40,000
        Plus the stock to be issued to the new
          stockholders ...................... 15,000
        Plus the amount the books show the corporation owed Mr. Rosenstein on April
          27th ............................. 5,300

                                $60,300

The statement of appellant Stiller, as presented to the bank at the time this loan was secured, showed, among other things, that he was the owner of "⅓ interest—Pacific Cotton and Finance Corporation, $20,100.00." In explanation of the reason why the statement of Stiller, the president of the corporation, was required by the bank officials, Mr. Heim, one of the vice-presidents of the bank, and the official who conducted the negotiations preliminary to the making of the loan, testified: "We relied [on making the loan] on the financial statement of the Pacific Cotton and Finance Company with the information we had of the principal

stockholder and president of the corporation. We feel a corporation is just as good as the president of the corporation who manages the corporation.''

The sole controversy involved under the second cause of action is whether appellant Stiller should be held under his stockholder's liability on his 100 shares only, or whether he should be held liable as the owner of one-third of the stock of the Pacific Cotton and Finance Corporation, as shown by the financial statement made by him at the bank at the time the loan was procured. Appellant Stiller contends that his liability for the indebtedness incurred by reason of the borrowing of said sum of $15,000 was and is fixed by the actual number of shares owned by him and standing in his name on the corporation's books at the date of the incurring of said indebtedness. On the other hand the respondent contends that, as the loan was made on the strength of Stiller's written statement that he was the owner of one-third interest in the corporation, he is now estopped from asserting that he was in fact the owner of a less number of shares than that stated in his financial statement. Respondent further contends that under the facts proven in this case the appellant Stiller was on the date said indebtedness was incurred in fact the owner, either legal or equitable, of one-third of the capital stock of said corporation. As this question involves both causes of action, we will give it first consideration.

While the evidence in many of its features is not as clear as we might wish, we think it is sufficient to warrant the statement that it shows the existence of the following series of fact: ''In April, 1925, the issued capital stock of the Pacific Cotton and Finance Corporation was owned by Mr. and Mrs. Levinson and a Mr. Rosenstein. These three in that month made an agreement with the three appellants, whereby the latter would advance to the corporation the sum of $15,000 in consideration of which there would be issued to them upon the receipt of a permit from the corporation commissioner to sell the unissued stock of said corporation, 1500 shares of the treasury stock of said corporation, and in addition thereto the Levinsons and Rosenstein agreed to transfer a sufficient amount of their personally owned stock in said corporation to appellants so that there would then be 6,300 shares of stock of the said corporation issued and outstand-

ing, which shares of stock would be owned in the following amounts: The Levinsons and Rosenstein would own one-third of said stock or 2,100 shares, appellant Stiller would own 2,100 shares, and the two appellants, Cohn and Kay, would together own the remaining one-third. In pursuance of this agreement, and on or about April 20, 1925, the appellants paid into the treasury of the corporation the sum of $15,000, and Mr. Rosenstein, who owned all of the stock outstanding, except qualifying shares to directors, amounting to 4,000 shares, resigned as a director of the corporation, and indorsed all his certificates of stock, and delivered them to the attorney of appellants. Thereupon 100 shares were issued to each of the appellants, Stiller and Kay, and Stiller was then elected president and Kay secretary of the corporation. At a later meeting of the board of directors held on April 20, 1925, an application was made to the corporation commissioner for permission to sell all unissued stock to the directors for cash. It was at this stage of the proceedings that negotiations were begun for a loan from the plaintiff bank which resulted in the bank loaning said corporation said sum of $15,000 upon the promissory note of the corporation after appellant Stiller had furnished the bank the corporation's and his own financial statements. It thus appears that, at the time this indebtedness was incurred, although only 100 shares of the stock stood in Stiller's name on the books of the company, Stiller in fact owned his portion of the stock indorsed by Rosenstein and delivered to Stiller's attorney, besides an interest in one-third of the stock for which he had paid and which was to be issued by the corporation as soon as the permit was received from the corporation commissioner. These three lots of stock amount to one-third of the stock of said corporation. The permit to sell said stock was not issued by the corporation commissioner until three days later, May 7th, and none of the stock, except the 100 shares, was actually issued in Stiller's name until July 21, 1925. Under this statement of facts, the respondent bank does not have to rely wholly upon the doctrine of estoppel in order to hold Stiller on his liability as the owner of one-third of the capital stock of said corporation. To all intents and purposes, Stiller was on May 4, 1925, the owner of one-third of the stock of said corporation, although only 100 shares

of stock stood in his name on the books of the corporation. Possibly it might be necessary on account of the strict language of the Corporate Securities Act to eliminate from this calculation the unissued stock which was to be issued after the permit was received from the corporation commissioner. Even if this is done, practically the same result is obtained. At the beginning of the negotiations between appellants and Rosenstein and the Levinsons, with the exception of possibly two or three shares of stock issued to the Levinsons to qualify them to act as directors, Rosenstein was the owner of the entire outstanding stock of said corporation consisting of 4,000 shares. He indorsed and delivered to appellants' attorney certificates representing this entire block of stock. He had agreed with appellants to sell to them, either from his own stock or from the unissued stock, or from both sources, a sufficient number of shares so that the stock of said corporation would be held one-third thereof by himself and the Levinsons, one-third by Stiller, and one-third by Kay and Cohn. Had the permit never been issued by the corporation commissioner, and had no further stock been issued by the corporation, Stiller and his associates Kay and Cohn would undoubtedly have received out of the 4,000 shares in the hands of their attorney the shares of stock to which they were entitled under their agreement with Rosenstein. The evidence does not directly show the reasons why Rosenstein turned over to appellants' attorney the 4,000 shares, when by the strict letter of his agreement he was only required to deliver to them a less number of shares—2,700, as we construe their agreement. It may reasonably be inferred from his act of indorsing and delivering this excessive amount of stock to the attorney that he intended, should any slip occur in their plan to issue the new stock, the appellants would be amply protected by the deposit of the 4,000 shares with the attorney. In either event, the appellant Stiller would receive the amount of stock which Rosenstein had agreed to sell and for which Stiller had paid, and he would thus own a one-third interest in the Pacific Cotton and Finance Corporation. It is true that only 100 shares of this stock stood in Stiller's name on the books of the corporation.

Under section 322 of the Civil Code as it stood at the time of this transaction, a stockholder is liable for his

proportionate amount of the indebtedness of the corporation not only for the stock standing in his name on the books of the company, but also for all stock owned by him which stands on the books in the name of another. (*Duke* v. *Huntington*, 130 Cal. 272 [62 Pac. 510]; *Hughes Mfg. etc. Co.* v. *Wilcox*, 13 Cal. App. 22, 27 [108 Pac. 871, 873]; 6 Cal. Jur., sec. 384, p. 1004.) Stiller's liability, therefore, extended to his entire ownership of stock in the corporation which, as we have seen, was one-third of the entire stock outstanding.

Furthermore, under the theory of estoppel, we think the judgment against Stiller must be sustained. The respondent bank before it would agree to make the loan to the Pacific Cotton and Finance Corporation required of Stiller, its president, a statement showing his own financial condition. Undoubtedly one purpose of this requirement was to ascertain not only the financial standing of Stiller, but also the amount of his interest in the corporation of which he was president. The statement presented by Stiller showed that he was possessed of considerable means in his own right and was also the owner of one-third of the capital stock of the corporation. Unquestionably this statement had a material bearing upon the decision of the bank officials in making the loan to Stiller's corporation. It is reasonable to suppose that had the statement shown that Stiller was the owner of only a small amount of property, or that he was possessed of only a nominal interest in the corporation, the loan might not have been made. It has been held that where the holder of the record title is not the owner of the stock, his liability to creditors is based, not upon ownership, but upon estoppel. (*Hughes Mfg. etc. Co.* v. *Wilcox*, 13 Cal. App. 22 [108 Pac. 871].) If one, not an owner of stock, can be held liable by estoppel by permitting the stock to stand in his name on the books of the company, we think the same rule should apply when a person, even though not the owner of stock, makes a positive and definite statement that he is such owner, and by the means of such a statement obtains property or credit for himself or for his company. Appellants have cited us to no authority to the contrary, but content themselves with the statement that respondent is barred from relying upon the claim of estoppel by reason of its failure to inform

itself by an investigation of the books of the corporation of the extent of Stiller's ownership of stock. Under the circumstances shown in this case, we think this contention is without merit. "Every contracting party has an absolute right to rely on the express statement of an existing fact, the truth of which is known to the opposite party and unknown to him, as the basis of a mutual agreement; and he is under no obligation to investigate and verify statements to the truth of which the other party to the contract, with full means of knowledge, has deliberately pledged his faith."

"Where one is justified in relying, and in fact does rely, upon false representations, his right of action is not destroyed because means of knowledge were open to him. In such a case no duty rests upon him to employ such means of knowledge. . . . It is said not to be just that a man who deceives another should be permitted to say to him, 'You ought not to believe or trust me,' or 'You are yourself guilty of negligence.' " (12 Cal. Jur.; sec. 34, p. 758.)

This disposes of the transaction of the loan made on May 4, 1925, as set forth in plaintiff's second cause of action.

The next transaction was that occurring on July 8, 1925, and is contained in plaintiff's first cause of action. On that date, as we have previously observed, the Pacific Cotton and Finance Corporation borrowed of the respondent bank the sum of $22,625 and gave its promissory note for that amount. This note was renewed on October 6, 1925, but as the original indebtedness was created on July 8, 1925, this date must be used in fixing the liability of the several stockholders for their proportion of this indebtedness. This indebtedness at the time of the commencement of the action had been reduced to something slightly over $6,000. As stated above, the permit of the corporation commissioner to sell the unissued stock for cash had been issued on May 7, 1925, some two months before this second loan was made. This was the date fixed by the original agreement between Rosenstein and the Levinsons on the one hand and the appellants on the other when the stock purchased by appellants should be issued and transferred. On this date, therefore, the appellants became the

legal owners of the stock purchased by them under their agreement with Rosenstein and the Levinsons even though the actual issuance and transfer of this stock was not made until July 21, 1925. There was no change in the ownership of the stock between May 4, and July 8, 1925, in so far as the appellants were concerned, except that there was evidence, which the court evidently accepted and acted upon, that appellant Stiller had transferred one-half of his stock to his son, Marvin Stiller. Appellant Stiller under the agreement made with Rosenstein and the Levinsons bought one-third of the stock and appellants Kay and Cohn bought one-third between them, or one-sixth each. As Stiller conveyed one-half of his third of the stock to his son, this left him with one-sixth of the stock. The court accordingly found that each of these three appellants was liable for one-sixth of the remaining amount due on the indebtedness created on July 8, 1925. The same character of defense is made by these three appellants as was made by the appellant Stiller in reference to his liability under the previous indebtedness. Stiller and Kay contend that as only 100 shares of stock stood of record in their names and as the total outstanding stock of the corporation at that date was 6,300 shares, their proportion of said indebtedness would only be 1/63 of the same, while Cohn contends that as no stock stood of record in his name, he was not liable for any part of said indebtedness. Under the authorities heretofore cited the appellants are liable as stockholders for the proportionate amount of said indebtedness upon all stock owned by them respectively whether the same stood upon the record of the books of the corporation or not. As the appellants had previously bought and paid for their stock, they became the legal owners thereof at the date of said purchase, at least as to a part of said stock, and as to the balance thereof at the date the permit was issued by the corporation commissioner, and as they remained such owners, except as to the stock transferred by Stiller to his son, up to and at the time the indebtedness of July 8, 1925, was incurred, they are liable for said indebtedness as found by the trial court.

■ There is no merit in appellant Stiller's contention that the court erred in admitting in evidence the two financial statements presented to the plaintiff by appellant

Stiller, at the time the loan of $15,000 was made on May 4, 1925. Appellant particularly objects to the admission in evidence of his own personal financial statement claiming the same was not material to any issue in the case and that the trial court was misled thereby. The admission of this statement was proper in view of the evidence given by Mr. Heim, who testified to the effect that the loan was made, in part at least, upon the strength of Stiller's financial statement.

We find no error in the record. The judgment is affirmed.

Langdon, J., Seawell, J., Preston, J., Tyler, J., *pro tem.,* Shenk, J., and Waste, C. J., concurred.